1 R   163
19 SC ²559

[PHILADELPHIA, JANUARY, 24, 1829.]

## ADLUM *against* YARD.

### IN ERROR.

If, on the trial of a *Scire Facias* against a garnishee in a foreign attachment, the plaintiff read the answers of the defendant to the interrogatories exhibited to him on the part of the plaintiff, he may, notwithstanding, contradict those answers, by showing that the defendant swore differently on another occasion.

Though an assignment be in its nature calculated to delay creditors, and therefore voidable, yet, if a creditor take a dividend under it, he cannot afterwards question its validity.

The lapse of seventeen years, without corroborating circumstances, is too short a time to raise a legal presumption, that the objects for which an assignment was made for the benefit of creditors, had either been accomplished or abandoned.

ERROR to the District Court for the city and county of *Philadelphia*, in a *Scire Facias* against the defendant in error as garnishee in a foreign attachment.

A writ of foreign attachment, at the suit of *John Adlum*, the plaintiff in error, against *Edward Stevens*, was issued, and laid in the hands of *James Yard*, the defendant in error.

After judgment had been entered in the attachment, a *Scire Facias* was issued against *Yard*, as garnishee, and several sets of interrogatories filed in succession, to all of which he gave answers upon oath.

When the trial came on in the District Court, his answers were read by the plaintiff's counsel, who afterwards offered to read the final examination of *Yard*, before commissioners of bankruptcy, under a commission which issued against him in the year 1802; in order to show a contradiction between what he then swore and his present answers. The court rejected the evidence.

The defendant then gave in evidence, a general assignment made by *Stevens*, of his estate and effects, on the 17th of *May*, 1802, to trustees, for the benefit of his creditors, in the following words:—

"Know all men by these presents,—that whereas I, *Edward Stevens*, of *Philadelphia* county, being indebted to sundry persons, in divers sums of money, which at present I am unable fully to pay and discharge, and being desirous, as far as lies in my power, to satisfy the persons to whom I am indebted, I do hereby grant, bargain, sell, assign, and set over, to *Samuel M. Fox, Matthias Pierce,* and *Anthony Morris,* all my estate, goods, chattels, debts, and property, as well real as personal, of which the schedule hereunto annexed contains a fair and true account, to them the said *S. M. Fox, M. Pierce,* and *Anthony Morris,* their heirs, executors, administrators, and assigns for ever, upon the condition following, viz. That all monies which shall arise from the estate, goods, chattels, debts, and property aforesaid, shall be equally divided, in proportion to their respective demands, among my said creditors. But

(Adlum v. Yard.)

that the lands mentioned in the schedule shall not be sold, until after the expiration of three years from this date, after which it shall and may be lawful, to and for the said *S. M. Fox, M. Pierce,* and *Anthony Morris;* to make sale of the said lands, or so much of them as shall be sufficient to pay and discharge what may then be due and owing from me to my said creditors. And, in case the estate and effects of *James Yard* shall, before the expiration of the said term of three years, prove sufficient to discharge the whole of his debts for which I am responsible, then the above mentioned estate, goods, debts, chattels, and property, or so much thereof as shall at that time remain undivided, shall be restored to me, in the same manner as I now hold them. Witness my hand and seal the 16th of *May,* 1802. 　. (Signed)· 　· " *Edward Stevens.* (L. S.)

" Sealed and delivered in presence of
　　" *James Latimer,*
　　" *James A. Wood.*"

" List of the debts of *Edward Stevens,* by his indorsements for *James Yard:*—

　*Pratt, Son,* & *Kintzing,* secured by mortgage, 　$33,836　64

| | |
|---|---|
| *William Read* & Co. - - - - | 32,015　36 |
| Bank of *United States,* on seven notes, - | 17,400. |
| Bank of *North America,* on seven ditto, - | 10,000 |
| Bank of *Pennsylvania,* on two ditto, - | 4,850 |
| *Donath* & Co. on five ditto, - - - | 22,127 |
| | 86,392　36 |
| *Stephen Girard,* - - - - - | 6,000 . |
| | $92,392　36 |

" Besides the above debts, I have unsettled accounts with *Thomas Knox, William Gordon,* Monsieur de *Rette,* and *James Yard,* but do not know at present on which side the balance lies. I am, however, confident, that it cannot be considerable either for or against me. 　· (Signed) 　. 　· " *Edward Stevens.*"

" Schedule of the property and effects of *Edward Stevens:*—

| | |
|---|---|
| Debt from the *United States,* · - - - | $20,000 |
| Lot in *Chesnut* Street, . - - - - | 3,333 |
| Interest in ship *Asia* and Brig *Dolly,* - | 15,000 |
| Lands bought of *John Adlum,* subject to incumbrances, as stated, - · - - - ·- | 20,000 |

Household furniture, professional and other books.
One-sixth of 217,000 acres of land on the West
　　Branch of the River *Susquehannah,* being

(Adlum *v.* Yard.)

half of the third part of the said tract con-
veyed by *George Eddy* and *Esther* his wife,
to *Edward Stevens*, by indenture, dated the
11th *February*, 1795,    -    -    -    $27,000

"*N. B.*—The last mentioned land is really the property of Mrs.
*Stevens;* but, as doubts have arisen whether the proofs thereof are
conclusive, I do hereby declare, that I assign and set over to the
assignees of my other effects, all the right, title, claim, interest,
and demand, which it shall be proven that I have in and to the
said land, to hold on the conditions mentioned in the foregoing as-
signment.

" The remaining one-sixth part of the land is the property of *Er-
nest Frederick Walterstorff*, of *Copenhagen, Denmark*, of which
the proofs are full and conclusive.

(Signed)    "*Edward Stevens.*"
"Recorded *Feb.* 21, 1803."

The defendant also gave in evidence payments made by the as-
signees to the creditors of *Stevens*, during the year 1804, amount-
ing to $23,000, and produced the receipts of *Adlum* for money
paid to him by the assignees to the amount of $6,222. Evidence
of other facts was also given on the trial, which it is at present
unnecessary to notice.

The plaintiff's counsel proved the payment of taxes, by *Yard*,
on part of the lands included in the assignment; and contended,
that the assignment was in itself void, or, if not so, that from the
length of time that had elapsed without any thing having been done
under it, the objects of the trust must be presumed to have been
either accomplished or abandoned.

The court charged the jury in favour of the defendant, and a bill
of exceptions was taken, as well to the overruling of the evidence,
as to the charge to the jury.

*Chew* and *Rawle*, for the plaintiff in error, contended, that the
examination of *Yard* before the commissioners of bankruptcy ought
to have been admitted. It was offered, to show that *Yard* was not
entitled to certain credits, asserted in his answers to be due to him
for advances made by him before his bankruptcy. It was objected
to by the defendant's counsel; the court sustained the objection, and
declared that no evidence should be given to the jury to contradict
the answers of the garnishee.

The propriety of this decision may in some measure depend on
the character in which the garnishee is to be viewed.

If merely as a witness at common law, the rule is well settled,
that he who calls a witness shall not be admitted afterwards to im-
peach his general character; but it goes no further. If the witness
is mistaken as to a fact, it is competent for him who calls him to
correct the mistake by means of another. But a garnishee in a fo-
reign attachment stands on different grounds. He is not so much

(Adlum *v.* Yard.)

a witness as a defendant answering to a bill of discovery and relief; as to whom the rule is, that the whole of his answer must indeed be read, but it is not all to be alike believed. 1 *Phill. Ev.* 360. Till the act of the 28th of *September*, 1789, the process of foreign attachment often proved fruitless from the difficulty of proving effects in the hands of the garnishee. By that act, he was justly placed on the footing of a mere stakeholder. By that act, he is required to give, on oath or affirmation, " full, direct, and true answers to all and singular the interrogatories exhibited on the part of the plaintiff." If the plaintiff is satisfied that his answers are " full, direct, and true," he may take judgment for what is so acknowledged to be in his hands without a trial. If his answers are otherwise than *full, direct, and true,* the act proceeds to say, that the court may award judgment against him for the whole of the plaintiff's demand. But how is it to be ascertained whether the answers are or are not full, direct, and true, except by counter evidence? The answers must first be read, or it cannot be decided whether they are such as the law requires. So that, instead of the plaintiff's being estopped by reading them, it is the very course that he must take. The next step is, to ascertain what may be the nature of that counter evidence. Must it be the testimony of other witnesses, or may we falsify the answers in part or in the whole by showing the contrary of what is now asserted, from the garnishee's own acknowledgments or acts on another occasion? But, according to the view taken by the court below, we are precluded from showing in any way that the answers are not what they ought to be; and, if this be law, any answers of a garnishee must be received, as full, direct, and true. There has been as yet no decision in this court on the construction of the act of assembly of 1789; not at least as to this point; but the case of *Cowden v. Reynolds*, 12 *Serg. & Rawle*, 281, is strongly apposite. They also cited *Walker* v. *Wallace*, 2 *Dall.* 113.

2. The assignment executed by *Stevens* in 1802, was in itself void; and, whether void or not, it had been abandoned for many years by the trustees, who never paid the taxes on the lands, nor participated in the claims on government for compensation under the *Spanish* treaty, nor called on *Yard* for reimbursement of the sums they were asserted to have paid out of *Stevens'* funds for his account, nor intervened on the present trial. It is the defendant who sets up this dormant, deserted trust.

The defects on the face of the instrument itself show that, as against creditors, it is fraudulent and void. The trustees, in whom the legal estate is intended to be vested, are not to sell for three years. A creditor obtaining judgment is then to be delayed for three years, without the power of laying an execution on the lands. There is a direct resulting trust in favour of *Stevens*, if the creditors on account of *Yard* are satisfied, whether the others are or not. This brings it within the case of *Burd* v. *Fitzsimmons*, as explained

(Adlum *v.* Yard.)

by Chief Justice TILGHMAN, in *Wilt* v. *Franklin,* 1 *Binn.* 515. If it is fraudulent, it is void; and that which is void, can be set up by no supposed act of confirmation. 1 *Inst.* 295. 3 *Burr.* 1794. 4 *Cruise,* 105. *Adlum's* receipt of monies from the trustees did not bind him. That he knew of the assignment, is obvious from the language used, though it does not appear that he knew the contents of it. The payment of taxes by the assignor, or his agent, is a strong argument in favour of the extinction of the trust. 4 *Johns.* 586. 10 *Serg. & Rawle,* 427. 14 *Johns.* 464. 20 *Johns.* 447.

*Binney* and *Chauncey,* for the defendant in error.—1. In refusing to permit Mr. *Yard's* final examination before the commissioners of bankruptcy to be read in evidence, the District Court was right. It was offered in order to prove that he was not entitled to certain credits stated to be due to him, for advances made before his bankruptcy for Dr. *Stevens.* The evidence was liable to objection, 1st. Because it was *irrelevant.* No such credits were stated to be due to *Yard.* They are stated argumentatively to be due to his assignees, and whether the fact be so or not, is immaterial. 2dly. Because it is not competent to the plaintiff to overthrow the answers of Mr. *Yard,* by discrediting him.

The question is new and of great interest. The plaintiff had examined Mr. *Yard* three times under oath; he had read his answers to the jury and neither produced nor offered to produce, any other evidence in support of his case. But he offered, from Mr. *Yard's* former declarations, to contradict and thus to discredit him. No principle has been stated, or authority produced, to sanction such a course. The case of *Walker* v. *Wallace,* 2 *Dall.* 113, is not to the purpose. It was a question of costs, and it did not appear that the answers were read on the trial. The answers of Mr. *Yard* may be regarded, 1. As those of the plaintiff's own witness. 2. As the answer of a defendant in chancery. 3. Under the act of assembly.

1. Mr. *Yard* is to be regarded as the plaintiff's witness, and not as a mere party. He is presumed to stand perfectly neutral, and his answers operate against the defendant in the attachment, for which purpose they were read. A party cannot contradict his own witness by showing that he made a different statement at a different time, because it directly discredits him, which cannot be done. If a party's own witness unexpectedly states a fact which operates against him, he may call a witness to prove that the fact was otherwise. Beyond this he cannot go. 1 *Phill.* 20, 211, 212. *Bull. N. P.* 297. In the case of *Nicoll* v. *Conard,* recently decided in the Circuit Court of the *United States* for this District, Judge WASHINGTON expressly overruled the evidence offered by the plaintiffs to show that witnesses called by them and stating certain facts on their cross-examination, had stated them differently on other occasions. The plaintiff was not bound to read the answers of the garnishees; but having chosen to read them, he read them as truth. They could be no surprise upon him, as he was previously acquaint-

(Adlum *v.* Yard.)

ed with their contents. In *Alexander* v. *Gibson*, 2 *Campb.* 556,
Lord ELLENBOROUGH said, that a party is not to set up so much
of a witness's testimony as makes for him, and reject or disprove
such part as is of a contrary tendency; but if a witness is called and
gives evidence against the party calling him, he may be contradicted
by other witnesses on the same side, and in this manner his evi-
dence may be entirely repudiated. 2. If the answers of the gar-
nishee are to be regarded in the light of an answer in chancery, it
was not competent to the plaintiff to reject any part of them by the
evidence offered. It is a fundamental rule that the whole of an
answer must be taken, if it be taken at all, and that part cannot be
taken and part rejected. 1 *Phill. Ev.* 264. *Lynch* v. *Clark*, 3
*Salk.* 154. *Bull. N. P.* 237. 1 *Starkie on Evidence*, 291. It is
utterly against the rule of reason to permit a party to discredit the
defendant, or to reject a part of his answer by showing that he stated
otherwise at another time. The course attempted to be adopted on
the other side, is an attempt to reject the answers, not by disproving
facts by other competent evidence, but by raising a question about
the party's credibility. 7 *Johns. Ch. R.* 217.

3. Under the act of assembly of the 28th of *September*, 1789,
sec. 3, the garnishee is bound to exhibit full, direct, and true an-
swers. If the plaintiff thinks he has not done so, he may apply to
the judges for judgment that he has assets to pay. If he omits to
do this, but goes to trial and uses the answers on the hearing, he ad-
mits them to be full, direct and true. He is not bound to use them;
but if he does, he admits them. The judge was therefore right,
in refusing to admit the garnishee's examination to be read in con-
tradiction of his answers. He confined himself to evidence of that
kind, and did not extend his rejection to every kind of evidence from
every other quarter. There was no refusal to admit evidence to
show that the garnishee was mistaken. But these points are imma-
terial, if the court below was right in their charge as to Dr. *Stevens'*
assignment; for if the court did commit an error, yet if the judg-
ment be right on the whole, it will not be reversed. *Edgar* v.
*Boies*, 11 *Serg. & Rawle*, 451. *Allen* v. *Rostain*, *Id.* 373, 374.
*Munderbach* v. *Lutz*, 14 *Serg. & Rawle*, 220.

2d. The main question is, whether the assignment did not pass
*Stevens'* interest in the money now demanded, to his assignees.
The only fund in question was that received under the *Florida* trea-
ty. The case stood on the assignment, and the acts under it, to
which *Adlum* was a party. The assignment passed this interest
generally and specially, and it appears from *Adlum's* receipts that
he received nearly seven thousand dollars from the assignees out of
the effects assigned. The assignment was never abandoned, but the
assignees waited for the *Asia* and *Dolly*, to obtain the means of
making another dividend. It is objected that the deed is void on
its face, by reason of the clause relating to the lands. To this it may
be answered, that no deed is absolutely void, even though it tend

(Adlum *v.* Yard.)

to delay creditors. *Roberts,* 3. *Stat.* 13. *Eliz. c.* 5. It is void only against certain persons whom it injures.    It is good against *Stevens,* who could not assert this money to be his.    It was never received as such.    The attachment claiming this as *Stevens'* money in *Yard's* hands, insists that *Yard* was the debtor of *Stevens,* in spite of *Stevens'* own act.    The assignment was likewise good against all creditors assenting to it and adopting it.    *Volenti non fit injuria. Anderson* v. *Roberts,* 18 *Johns.* 525, 526.    *Thomson* v. *Dougherty,* 12 *Serg. & Rawle,* 459.    1 *Bac. Ab.* 444.    22 *Vin.* 13, *pl.* 18.    *Id.* 24, *pl.* 2, *note.    Non constat* that there was a single creditor who did not assent and take a dividend.    It is perfectly clear that *Adlum* did.    He, therefore, was not delayed or hindered. He might have avoided the assignment, and resorted to the land by virtue of his mortgage.    It is further objected, that being originally void, the assignment is incapable of confirmation.    It has been shown that it was not utterly void.    The doctrine of confirmation is not applicable.    It is not the case of a defeasible estate, by reason of a defective title in *Stevens,* the real title being in another; but of a deed voidable by creditors, who have elected to approve or not to question it.    The objection that the instrument was void in consequence of the continued possession of *Stevens,* is not supported in point of fact.    The taxes paid by *Yard,* were on Mrs. *Stevens'* lands, and charged to her husband.    There is nothing to show such a possession on the part of *Stevens,* but decided acts to the contrary.

*In reply,* it was observed, that the act of 1789 did not devolve the hearing of the case upon the court, exclusive of the jury.    (The court deemed it was unnecessary to argue that point.)

In respect to the assignment, the plaintiff did not claim under *Stevens,* but against him, and to the overthrow of his acts; like the creditor proceeding to judgment and execution, according to Judge DUNCAN's opinion in *Thomson* v. *Dougherty.*    The delay on the part of *Stevens'* trustees, could not be accounted for in the manner proposed.    In 1807, the treaty of 1819 could not have been anticipated; and from 1819 till the present day they have remained entirely inactive.    We must suppose, either that they had relinquished their trust, or that the objects of it had been accomplished.

The opinion of the court was delivered by

GIBSON, C. J.—Under the act of 1705, the case of the garnishee was exactly that of any other defendant, the burthen of proof resting exclusively on the plaintiff.    But under the act of 1789, his position is entirely changed; being held liable in the first instance, and till he purge himself on oath.    His situation, therefore, is not that of a witness, or a respondent in equity; nor is his answer, when used against him, to be used as evidence originally adduced by the plaintiff.    Like a deposition which has passed publication in chancery, it is in evidence before the hearing, but in evidence on the

(Adlum *v.* Yard.)

part of the garnishee, who could not else sustain himself long enough even to get before a jury.   The plaintiff may, therefore, use it or not at discretion, just as a party may use answers extorted by a cross-examination; and he is consequently not bound, as in the case of a bill of discovery, to take the answer as true, but may discredit it in the same way that he might discredit the evidence of a witness on the adverse part.   Where the garnishee neglects or refuses to make "full, direct, and *true*" answers, the matter charged is to be taken *pro confesso,* and judgment rendered against him; so that the governing principle of the act is to hold him chargeable till he discharge himself, at least by his own oath; and, failing to do so, he is to remain fixed.   This is expressly his condition before answer put in.   But where the answer is *prima facie* sufficient, its truth may be inquired of by a jury; and the plaintiff makes out his case merely by destroying the effect of the answer, unless the garnishee has maintained the issue by other satisfactory evidence; and this the plaintiff may do by disproving the matter alleged in the answer, or by showing the garnishee to be entirely unworthy of credit.   In doing this, he restores the responsibility of the garnishee to the footing on which it was before the exhibition of the answer.   On this principle, evidence which falsifies any fact asserted in the answer, goes to the credibility of the garnishee, and is therefore competent.   This construction may seem severe; but it is entirely in accordance with the spirit of the act; and it is not more so than policy has been proved by experience to require.   All necessary facts and circumstances are, for the most part, exclusively in the knowledge of the garnishee; and without holding him to a strict account, the remedy by foreign attachment would seldom be effectual.   It is not to be understood from this, that every step is necessarily fatal, or that a plaintiff entitles himself to a verdict, where the jury are satisfied from the whole evidence, that the garnishee has in truth no effects of the original debtor. But where the cause goes to the jury with no evidence on the part of the garnishee but his own answer, and that is discredited entirely, or as regards the facts which constitute his title to a verdict, the jury are bound to find against him.

How does this bear on the question of evidence?   In his answer to the second set of interrogatories, the garnishee had stated, that Doctor *Stevens* was not originally interested in the cargoes of the *Asia* and the *Dolly,* and that no specific payment on account of his interest, was ever made by him; but that he became chargeable by the respondent in a heavy account pending between them; and that the advances made by the respondent would alone have absorbed, to within a trifle, the amount which Doctor *Stevens* could have claimed. At the trial the plaintiff offered the final examination of the garnishee before the commissioners of bankruptcy, " in order to prove that the same *James Yard* (the garnishee) was not entitled to claim certain credits stated to be due to him for advances made by him before his bankruptcy for the said *Edward Stevens.*"   It is obvious, on the

(Adlum *v.* Yard.)

principle I have indicated, that the evidence thus offered was competent to contradict a fact distinctly asserted by the garnishee.

The exception to the charge is not sustained. The clause in the assignment by which the trustees were to be restrained from selling the land for a period of three years, was undoubtedly in delay of creditors, and brought the whole within the purview of the 13 *Eliz.* The plaintiff might originally have repudiated this assignment, but having taken a dividend under it, he shall not now question its validity. It has been pressed on us, that a contract forbidden by a statute, is incapable of confirmation, except on terms which render it consistent with the statute, and for a new consideration. No one can doubt it. But surely the acceptance of a dividend under a deed of trust, is a new and a perfect consideration. Any one may waive the advantage of a law introduced for his own benefit; and I cannot imagine why creditors may not ratify a contract fraudulent only as to themselves, even in anticipation of a benefit. But where money is actually received, and on an implied condition that the receiver shall not question the title, every principle of natural justice requires that the condition should be performed. The doctrine of election is more analogous to estoppel than confirmation; and an estoppel may arise as well from matter *in pais*, as matter of record. Doctor *Stevens* might have excluded the plaintiff from the benefit of the trust altogether; and had he supposed the latter would not have agreed to every part of the arrangement, he would certainly have done it: so that the plaintiff having accepted a dividend on the only terms on which it was offered, is as effectually concluded from claiming in repugnant rights, as if he had asserted the validity of the deed of trust in a court of record. But it is supposed that the doctrine of election is inapplicable to creditors. There is no adjudication in support of this, but *Kidney* v. *Coussmaker,* (12 *Ves.* 154,) which cannot be cited here as an authority for any thing whatsoever, and from which, in the broad terms in which the principle is predicated, I entirely dissent. That was the case of a devise of part of the estate to trustees for payment of debts; and it was held that the creditors having obtained from the trust fund, satisfaction only in part, were not precluded from recourse to other parts of the estate which passed by the same will. To this I entirely assent, because the creditors could not be viewed as legatees, and the setting apart of a portion of the estate for the sake of convenience, indicated no intention that the creditors should not be paid in the event of its falling short. The law, therefore, would not imply a condition that the creditors should relinquish their rights on the rest of the estate. But the unqualified assertion of the Master of the Rolls that the doctrine of election is utterly inapplicable to creditors, seems to be received with many grains of allowance even in *England*. (1 *Hovenden's notes to Vesey,* 172.) In *Irvine* v. *Tab,* decided at the last term for the Western Circuit, we applied it to creditors claiming different debts under the same mortgage. In the case at bar, the debtor

(Adlum *v.* Yard.)

might prescribe the terms; and the plaintiff having received his dividend on an inherent condition to permit the whole arrangement to take effect, it seems clear that, subsequent to the period of acceptance, the debt attached as due to Doctor *Stevens,* was to every intent vested in his assignees.

But it is supposed the court erred in charging that no presumption arose from lapse of time, that the objects of the trust had been accomplished or abandoned; in either of which events, the contingent resulting trust in favour of the debtor, would have taken effect in possession. There was, it seems however, a lapse of but seventeen years from a time when the business of the trust was in full activity; a period which without corroborating circumstances, is too short to raise a legal presumption that the debts were paid, or that Mr. *Yard's* estate had within the prescribed period been found sufficient to discharge all his debts for which Doctor *Stevens* had become responsible. Beside, the delay is satisfactorily accounted for by the fact that the effects on which the attachment is laid, were received but a short time before; and it does not appear whether there was, in the mean time, any other property in hand. In the absence, then, of all circumstances but such as tended to rebut the supposed presumption, the court did not err in charging that the lapse of time was insufficient to revest the property in the assignor.

The following opinion was delivered by

Huston, J.—It has been said, that one or more questions arise in this case which are entirely new—have never been raised in any case, or decided by any court. Perhaps this is true. But it does not follow, that these questions are all of them difficult.

The first act about attachments, passed in 1705, (*Purd. Dig.* 37, 1 *Sm. Laws,* 45,) contemplates a trial by jury throughout, and expressly mentions, in the fourth section, " If the plaintiff in the attachment obtain a *verdict,* judgment, and execution," &c. And, in the fifth section, expressly provides for a trial by jury, when the garnishee denies that he has goods, &c., and directs the course of proceeding after the verdict. This act, however, made no provision for compelling the garnishee to disclose what goods, chattels, monies, and credits of the defendant were in his custody and possession, or due and owing by him to the defendant. To obtain this disclosure, an act was passed the 28th of *September,* 1789, (*Purd. Dig.* 38, 2 *Sm. Laws,* 502,) called a supplement to the several laws about attachments; by the second section of which it is provided, that the plaintiff, after having obtained judgment against the defendant, may prepare in writing, and file in the court out of which the attachment issued, such interrogatories, upon which the said plaintiff is or shall be desirous to obtain and compel the answers, of any and every garnishee, in whose hands the said writ or writs of attachment hath or have been or shall be respectively laid and served, touching the goods, chattels, monies, effects, and credits of the said defendant or

(Adlum *v.* Yard.)

defendants, in his or their possession, custody, and charge, or from him or them respectively due at the time of the service of the writ of attachment, or at any other time.

Section third provides, "Each and every such garnishee or garnishees to whom a copy of such interrogatories shall be delivered, is and are required and enjoined to appear, &c., and exhibit, under oath or affirmation, *full, direct, and true answers* to all interrogatories by the said plaintiff prepared and filed; and, if any garnishee or garnishees shall neglect or refuse so to do, then and in such case it shall and may be lawful for the justices of the proper court, and they are hereby required to adjudge, that such garnishee or garnishees, so neglecting or refusing as aforesaid, hath or have in his or their possession, custody, or charge, goods, chattels, monies, and effects of the said defendant or defendants, in such writ or writs of attachment respectively named, or is and are indebted to such defendant or defendants, to an amount and value sufficient to pay and satisfy the debt, claim, or demand of the said plaintiff, together with legal costs and charges of suit. And shall award execution against the persons or goods, &c., of the said garnishee or garnishees, and proceed in the same manner as if judgment had been obtained or pronounced in pursuance of the verdict of a jury or by virtue of the confession of the party."

It is now contended, the court, and the court alone, are to decide whether the answers are *full, direct, and true;* and, more, that the court is to decide on the answers themselves, without any evidence whatever to contradict the answers.

It may be conceded, that the court could decide, without going out of the questions and answers, whether the answer was *direct;* and, in one sense of the word, whether the answer was *full;* but in another, and in such case more material sense of the word, the court could not decide. For example—to the question what goods and effects of the defendant the garnishee had in his hands, the garnishee might answer as to part of the goods, and say nothing as to other goods. It may be said this would come under the word *true.* Be it so: my construction of the phrase is, that each answer must be full, and direct, and *true*—exactly tantamount to an oath to a witness, "to testify the truth, the whole truth, and nothing but the truth." The witness, whose testimony is not correct in all these particulars, is perjured, and may be indicted and punished, if the aberration from truth was intentional and material. So, perhaps, could the garnishee. This punishment, however, does produce justice to the party whose cause is trying; and he is permitted, by other testimony, to explain or contradict any testimony which would destroy his cause of action or his defence. Admit, however, for a moment, that the court alone were to judge of and decide on these answers, how they could determine whether they were *full* and *true,* without hearing other testimony, is for those to explain who advocate this position. But it is perhaps only contended, that the

(Adlum *v.* Yard.)

answers are conclusive as to their fulness and truth when the plaintiff reads them; and that when he has read them, he shall not be permitted to contradict or vary them in any particular.

I am of opinion that he may read them, and afterwards show that they are neither full nor true.

As respects the plaintiff's demand against the defendant, in the attachment, let it be remembered that is already established, and a judgment entered. The *Scire Facias* and interrogatories are not to make out a case as between the plaintiff and defendant; but to enable the plaintiff to recover the amount of his judgment from goods, &c. of the defendant, alleged to be in the possession of the garnishee, and, further, the interrogatories are not, and need not be, resorted to where the garnishee has at all times disclosed what goods, credits, &c. of the debtor were in his hands. It is only where the garnishee denies that he has any goods, or the plaintiff supposes him to have more than he admits, that this proceeding is necessary. The first act is not repealed, and you may proceed under it, if it will answer the purpose. The matter then in dispute on this *Scire Facias*, and the interrogatories, is a matter between the plaintiff and the garnishee, and in which, but for this act of assembly, the plaintiff could not obtain the answer of the garnishee. It is not the case of a plaintiff calling a witness, and afterwards discrediting his testimony, which I shall leave as it is in the decisions of our own courts in the cases cited.

It is much more analogous to a bill in chancery, and the answer of a trustee who is called upon to state on oath, whether he has effects liable to pay, and in consequence is liable to pay, the debt of the plaintiff; in which case, if the cause is tried on bill and answer, the answer is taken to be true; that is, where it is, on the face of it, full and direct. But the plaintiff may deny the truth of it, and if its truth is put in issue, may disprove all or any part of it.

Now, in this case, an issue was regularly formed. I do not, however, admit that we are to go to the practice of Courts of Chancery for our direction as to the mode of proceeding under our acts of assembly. It may be referred to, but it is not conclusive. This act of 1789 was intended to be carried into effect by a Court of Common Law, and by the process of our Common Law Court. A chancellor might commit, for refusing to answer, or to give a full and direct answer; but he would not sell the goods of the party refusing, and collect the debt of the plaintiff.

I have shown the first act contemplated, nay, provided for, a trial by jury, where the garnishee pleaded that he had no goods, &c. of the defendant. That act is not repealed by the supplement: it is left in full force; and an additional mode of obtaining information as to debtors' effects is given to him. But, even where the garnishee answers, that he has no goods, &c. he is not done; he is not discharged; he must plead to the *Scire Facias*, and the plaintiff may take issue on his plea, and a trial be had. We have several acts of

(Adlum *v.* Yard.)

assembly, which, from the letter of them, would seem to give to the court alone the power of determining facts as well as law. For example, the twelfth and fifteenth sections of the act for opening, repairing, &c. roads, which gives to justices of the peace a power of proceeding against supervisors neglecting their duty, or against individuals obstructing a road, with the right of appeal, in each case, to the Court of Quarter Sessions, who shall take such order thereon as to them shall appear just and reasonable; and the same shall be conclusive. Under this act, so far as I know, the practice has been, where the fact of neglect of duty, or of obstructing the road, is denied, not for the court to decide it; but a bill of indictment is sent up, and the facts decided by a jury, and I know of no other mode of proceeding in use. There are similar acts in more than one of civil cases; in all of which, so far as I know, where facts are contested, an issue is formed in the cause, or a feigned issue, to settle the facts.

If the defendant's construction is right, the act of 1789 would produce one of two effects: it would leave the plaintiff's rights and recovery perfectly at the mercy of the opposite party; for I have shown that the garnishee has, where the truth of his answer is contested, become the real party, or it would be of no advantage to the plaintiff at all. That the practice has been, to go on to trial after the answers of the garnishee, and to prove, if it can be proved, that his answers are not full and true, seems to me to be fully proved by 2 *Dall.* 113, where the court establish a rule as to costs in such cases.

A garnishee may appear before the court and jury in situations very dissimilar. He may have no claim to any part of the funds,— may be perfectly indifferent between the different claimants of the fund, or he may allege a right to retain a part or the whole of it, on some contract or for some debt to himself. A factor may retain for the balance due him, or a consignee may retain goods consigned to him, to pay a debt due to himself, or a debt due to himself from the consignee, though the goods were not consigned expressly for that purpose. 1 *Dall.* 3. But where a foreign attachment is laid on such goods, the garnishee must show that there is a debt due to him from the consignee by other evidence than his own oath. The act directs interrogatories as to goods, &c. in his hands and custody, or debts due from himself, and to such interrogatories he is compelled to answer. If he goes beyond this, and states any debt due to himself from the absent debtor, his oath is no evidence of such debt. If he goes still further, and states particulars of how it became due, and when and to what precise amount, his answer in this particular is beyond the intention of the act; and, if such part of his answer could be separated from the rest, in my opinion it ought not to go to the jury at all. If it be so mingled and interwoven with the disclosure of what is in his hands as not to be separated, the jury ought to be told, it is no evidence of the facts stated. It can, at best, be only considered as notice of what he intends to prove, and which ought to be

(Adlum *v.* Yard.)

disregarded, unless proved; and, as to all such parts of the answer as go to show a right of retainer by the garnishee, the plaintiff may disprove it by any legal evidence which he can adduce. It has been said that part of more than one of these answers was argument—matter stated hypothetically. If so, such part clearly was not evidence, and ought to have been rejected. But the plaintiff did not consider it so, nor did the court; nor do I think it was so intended by the garnishee. His counsel did not put it on that ground at the trial. The expressions, "The respondent has a just claim upon the said *Edward Stevens,* for the balance of an account current settled in *Dec.* 1824, to the amount of four thousand six hundred and eleven dollars and three cents," in No. 6, of the first interrogatories; and the expression, that after *Stevens* became interested in the *Asia* and *Dolly,* "he became chargeable by the respondent in a very heavy account pending between him and the said *Stevens,*" in the latter part of the first answer to the second set of interrogatories, are not, and were not, intended as arguments. The fact that he had a contract with *Stevens* under which he claimed half the money recovered, was no argument.

But there is another view of this matter: if the money received under the *Florida* treaty, above twelve thousand dollars, would be the right of *Stevens* as part owner, and above twenty-eight thousand would go to the assignees of *James Yard,* to be distributed among his creditors; that is, creditors before his bankruptcy, was *Stevens* one of such creditors, and to what amount? If he was, he is entitled to a dividend, and that dividend, for any thing we see in this cause, is as much in the hands and possession of *James Yard,* and as much liable to this attachment, as the part allotted to *Edward Stevens* by name. I say for any thing we see. I understand the whole of this money to have been in the hands of *James Yard* when the attachment was laid. Whether this dividend, if there is any due, can be recovered from the garnishee, in this proceeding, or must be sought for from the assignees of *James Yard,* or is due to the assignees of *Stevens;* or whether *Stevens* has any assignees, must depend on matters not known to this court, and I give no opinion about them.

It will appear from what has been said, that in my opinion the plaintiff ought to have been permitted to prove more in the hands of the garnishee, than was admitted, if he could so prove; that, as to any claim of the garnishee to the property or money in his hands, he was bound to prove his right to it by other testimony than his own oath; and that the plaintiff had a right to rebut that proof or any statement on that subject, by the garnishee himself, by any legal proof admissible in any other cause between contending parties; for I repeat, that where the garnishee admits the receipt of goods or money, but sets up a right to retain it, the suit is from thenceforth one between the plaintiff and garnishee, in substance and almost in form.

(Ádlum *v.* Yard.)

The act of 1789 contemplates a judgment against the garnishee, if he refuses to answer, or his answers as to what is in his hands are not full, direct, and true; and I have said, whether they are so, may, and often must be, decided by a jury. Whether the jury ought or can give a verdict against him for the whole of the plaintiff's demand, if they find that his answers are not full, direct, and true, has not been discussed, and I do not wish to give a binding opinion on this. I should suppose there were cases in which they might and ought to do so, but that this would only be where they found a plain intention to conceal or mislead as to the amount in the hands of the garnishee, but by no means on account of the garnishee failing to support his own claim of retaining for himself. It is for concealing the goods in his possession that this penalty is inflicted; not for setting up an unsupported claim to those goods.

Another, and most important question, arises in another part of this cause. The deed of assignment by *Stevens* has some unusual clauses; no sales are to be made of the real estate for three years from the date of the instrument. It also appears, by this instrument and the indorsement, that *Stevens* was liable for above ninety thousand dollars on *James Yard's* account; and it provides that if *James Yard* or his assigns, paid or discharged this debt within three years, the assignment was not to have effect; but *Stevens'* estate was to be restored to him in the same manner he held it before the assignment.

As I understand the law, either, and *a fortiori* both these clauses render this deed, in the words of the law, utterly void, frustrate, and of no effect. If this is not to delay and hinder creditors, to drive them to compromises, to releases, to defeat their claims, and prostrate their rights, I do not see what would have those effects. Assignments by debtors have been supported in this state, under circumstances, and containing clauses, which would avoid them in any other country governed by the same laws, and as I believe, clearly against both the letter and spirit of the law. An unwillingness to disturb and unsettle many assignments made and acted upon before any of those cases were brought before the court, led to those decisions. The decided cases have given a sanction as far as they have gone. I do not agree to go one jot further. If assignments have been made not sanctioned by decision, I do not agree to give them my sanction; for we must stop somewhere: we must at some point and at some time say, no matter how many have violated the law or how long it has been acquiesced in; the law has said the deed is utterly void, and we must say so also; and if a debtor can assign his property—keep his creditors from touching it for three years, he may for thirty; there is in fact little difference; the creditor, in most instances, will be ruined or prevented in some way from getting his debt, as effectually in the one case as in the other.

But it has been argued that this deed has been confirmed or rather

(Adlum *v.* Yard.)

rendered valid by some acts of the plaintiff in this cause; at least valid as to him; and a case has been cited where a deed of a married woman which was void, had been rendered valid by a delivery after she became sole. It would be more correct to say that a new deed after she became sole, conveyed the land. A deed takes effect from the delivery; before the second delivery it was no deed; after the second delivery, it was a deed from that time. If there is any case where a deed made void by a positive law has ever been held valid, it has not been cited, and among the many decisions on the law in question, I can find no *dictum* that such a deed can ever become valid. Who can give it validity? All the creditors, it is said, may agree beforehand to such a deed. Be it so: but then the case of a contract with creditors is presented, and not a deed to delay and defraud: then it would be a stay of execution by creditors; not one imposed on them.

But they may agree afterwards. They may, I admit, agree not to object to it; but they must all agree. If one does not, he may treat the deed as void, and take the property. In such a case, what is to become of those who had agreed or were willing to agree?—They get nothing. But did they agree to this?—You must let the court see their agreement before the extent and effect of it can be decided on. If the agreement is written, the court decide on it; if by parol, a jury must decide whether such agreement was made, and what it was, before a court can say what the effect of it is.

But it is said the plaintiff, who has received money, a part of his debt, cannot now say the deed is void; and his receipts show that he received money from these assignees. A creditor to whom three thousand dollars is due, may be and often is glad to get a part of it from any source: he may be in want, at the door of a jail, or his family starving. (I do not speak of this case, for I do not know the facts.) He may be deceived, misinformed: he may not have seen the deed:—is his receipt of money in all cases, under all circumstances, to bind him?—If not, and there may be any case in which he would not be bound, the court were wrong in taking this matter from the jury. But it is said a man cannot affirm and disaffirm the same thing. I admit he cannot do so at the same time; but he may at one time, under a mistake, treat a deed or will as valid, and not be bound to admit it to be so at all times and with other information.

A man who accepts a small legacy, much less than what would be his distributive share of an estate, and does so because he has been told there is a will, is not precluded from claiming more when he finds there was no will, or that it was void because the testator was insane when it was made, or an infant, or that it was inoperative, because only one witness could be found who could prove it. A person cannot hold what he has got under a deed or will, and which he would not have gotten but for such deed or will, and

(Adlum *v*. Yard.)

.still recover what he would be entitled to, independent. of such in-
strument. But on accounting for what he has received under a mis-
take, and admitting it to have been received under a mistake, he
may get what by law he is entitled to, in addition. This generally—
length of time, or other circumstances, may form exceptions. .

If a creditor under a mistake, or from misrepresentation, has
signed a release, he may be relieved from it. I do not see, then,
how he can be absolutely precluded by an act *in pais,* the most
equivocal of all possible ratifications. And I do not agree that cre-
ditors who have a right independent of the deed or will, are put to
their election. They may take what is devised or conveyed for
payment of debts, and, if not satisfied, resort to other property for
the balance. To them the doctrine of election does not apply, as it
does to volunteers, or persons who but for the instrument would
have no claim.

I would say, then, that this deed was totally void, and not vali-
dated by any act done, taking it in the strongest sense against the
plaintiff; but, if it could be validated, that the act of receiving part
of his debt was not such an act,—at least, that being a matter *in
pais,* it must be left to a jury, and not decided at once by the court.

I think, also, the question whether the sums for which Dr. *Ste-
vens* was responsible for *James Yard* were discharged, was open
to investigation, if the deed was ever good; and that it was proper
to inquire whether the supposed assignees of *Stevens* ever acted;
and, if they did, when they ceased to act; and how far they have
abandoned the trust, and the trust property might be material in this
case. I know nothing of the circumstances of this case; but I con-
ceive it possible, that a case may exist where the assignees have
totally abandoned the property, or never intermeddled with it;—in
which case it would be great injustice to interpose their names, and
use their neglected or abandoned title to defeat a creditor pursuing
his right according to law.

It is not enough that a man has executed a deed of trust without
consideration, and has acted as if it was accepted by them in some
particulars, or has done some acts in their names, or procured some
one to do so. Where a trust has really been created for a good and
lawful purpose, chancery will not suffer it to fail for want of a trus-
tee; but I suspect we have many trusts of a kind unknown to any
chancellor; and this court has decided, that a conveyance to trustees
for payment of debts, of personal property, of which no possession
was delivered, and where the debtor went on to act for many months,
as before the conveyance, was totally void, and the goods were as
subject to the execution of a creditor as before the conveyance. I
would then permit an inquiry whether such acts have been done as
prove whether there was an acceptance of the trust; and that it is,
or is not, and has not been treated both by Dr. *Stevens,* and the as-
signees as at an end—and how long;—for where there is no Court

(Adlum *v.* Yard.)

of Chancery to compel a discovery or a reconveyance, we must attain the object in some other way, and not lock up an estate for ever by a conveyance not operative.    All this, however, would not be necessary, if—as I hold—the conveyance was void in its creation.

Tod, J., concurred with Huston, J., except as to the deed not being rendered valid by the subsequent acts of the creditors.

Smith, J., was absent.

Judgment reversed, and a *venire facias de novo* awarded.