### ESTATE of JAMES BURKE.

After a *bonâ fide* distribution by a trustee, for creditors, of funds in his hands, under the decree of the Court having jurisdiction of the account, he is protected against third persons claiming adversely to the trust.   Such adverse claimants are bound to come into the Court and assert their claim.   For that is fully competent to determine whether the funds in the hands of the trustee are truly part and parcel of the estate or not.

An assignment for the use of creditors, not recorded within thirty days, according to the requisitions of the Act of the 24th of March, 1818, is not absolutely void, but only voidable at the election of the creditors.  As between the assignor and assignee, and such creditors as do not elect to avoid such unrecorded assignment, it is good and effective.

Where a creditor does an act affirming the assignment, his election is made, and he is estopped from afterwards impeaching it.

It is a settled principle that a creditor may conclude himself from objecting to the omission of recording an assignment within the period prescribed by law. The main question in such cases is, as to what will be deemed sufficient evidence of an election to take under the assignment, and waive the objection ,which, if taken in time, would invalidate it.

Where a creditor suffers a long time to elapse after the assignment is made and recorded; makes no objection to its validity; and, after the assignee files his account, appears in Court and files specific objections to the correctness of the account, but complains of no omission in the recording of the assignment, but bases all his exceptions upon the regularity of the account, and the improper settlement of the affairs of the estate, and claims as a creditor of the same : this is satisfactory evidence that he has elected to claim under the assignment, and obtain the-benefits which may arise from the same.

When an election is once made, it is irrevocable. The record of an assignment is a public record, and a creditor is bound to know whether the requisitions of the law have been complied with as to its being recorded in time.

The Court of Common Pleas, when distributing the funds in the hands of a trustee under a voluntary assignment, are acting as a Court of Equity, and have the power to prevent a suitor bound to submit to their decrees, from vexing others with actions where the subject-matter has been fully decided.

Where a creditor had appeared and filed exceptions to the validity of an assignee's account, and it was referred to an auditor, and he then appeared and objected to certain portions of the account, but afterwards filed a petition setting forth the assignment was invalid because it was not recorded within thirty days, and alleged that he had attached the funds in the hands of the assignee, the Court dismissed the petition, and decreed that the money should be distributed.

*June 4.*   THIS case arose on a petition in the Common Pleas, filed by James Murphy, asking that the funds in the hands of Burke's assignee might not be distributed, for reasons fully set forth therein; but as all the facts which gave rise to the questions of law determined by the Court, are so fully set forth in the opinion delivered, it is deemed unnecessary to state them more in detail.

The case was argued by *S. V. Smith,* Esq., for the petitioner, and Mr. *Stille,* for the assignee.

The following opinion was delivered by

KING, President.—James Burke, on the 24th day of April, 1848, executed to William Dickson a general assignment of his estate in trust for the benefit of his creditors. This assignment was recorded on the 25th of May, 1848, the thirty-first day after its execution. The assignee took possession of the assigned estate, and reduced it by sales into money, out of which he defrayed the expenses of executing the trust. On the 13th of June, 1849, he filed his account in the office of the Prothonotary of this Court, notice of which was given to the creditors of the assignor, according to law. On the 7th of July, 1849, James Murphy, a creditor of the assignor, entitled to claim under the assignment, filed a number of exceptions to the confirmation of this account, complaining of excesses of credits claimed by the assignee and insufficiency of debts charged against him. Matters so rested in this Court until the 28th of January, 1850, when the accounts were referred to an auditor, to audit, settle, and adjust, and report distribution of the balance in the hands of the assignee. On the 6th of September, 1849, two months after Murphy had filed his exceptions to the assignee's account, and while they were still pending, he instituted an action in the District Court against Burke, the assignor, and on the 10th of the ensuing November, obtained a judgment against the latter for $1339.85. On the same day this judgment was obtained against Burke, Murphy sued out his attachment execution against the latter; in which writ he made Dickson, the voluntary assignee, garnishee. The object of this proceeding was to take advantage of the fact that the assignment had been recorded one day too late.

On the 18th of February, 1850, the auditor met the assignee, creditors, and others interested in the estate, pursuant to notice. Among others appeared James Murphy, by his counsel; not, however, to claim a dividend of the assets in common with the other creditors, but to object to any distribution of them, while his attachment, under which he claimed the whole, was pending and undetermined. The auditor, however, proceeded to make distribution of the estate, from which James Murphy was of course excluded, as he did not see fit to present his claim; supposing, perhaps, that he occupied a better position, claiming against the assignment. The report of the auditor was filed on the 1st of April, 1850, to which is annexed a series of exceptions filed by Murphy, which, in effect, amount to a denial of the right of the

auditor to make distribution of Burke's estate while the attachment was pending.

On the 4th of June, 1850, Murphy filed his petition in this Court, in which he states the facts of having obtained judgment against Burke on the 10th of November, 1849; of his having that day issued his writ of attachment execution against Burke as defendant and Dickson as garnishee; and that the property on which the attachment was levied in the hands of Dickson as the property of Burke, was the same which it is now proposed to apportion among the creditors of Burke according to the report of our auditor. The prayer of the petition is, that this Court may stay all further proceedings in the matter of the accounts of William Dickson, assignee of James Burke, until the question of the right of Murphy to maintain his attachment is tried at law in the District Court, where it is pending, and where such proceedings have been had therein that the cause is now at issue and ready for trial.

This application seems to have arisen from the doctrine of the Supreme Court in Weber v. Samuel, 7 Barr, 500, in which that Court most correctly determined that after the *bon â fide* distribution by a trustee for creditors, of funds in his hands, under the decree of this Court, the decree protected him against third persons claiming adverse to the trust; such adverse claimants being bound to come into this Court to assert their claim; and this Court being fully competent to determine whether the fund in the hands of the trustee was truly part and parcel of the trust estate, or whether it properly belonged to the party claiming adverse to the trust. The manner of this Court's procedure in this class of cases being regulated by the course of Courts of Equity.

An assignment for the use of creditors not recorded within thirty days according to the requisitions of the Act of the 24th of March, 1818, is not absolutely void, but only voidable at the election of the creditors. As between the assignor and assignee and such creditors as do not elect to avoid such unrecorded assignment, it is good and effective to all intents and purposes. Any judgment-creditor who elects to repudiate the assignment may levy on the assigned property to the extent of satisfying his judgment. The rest of the estate, however, remains in the care of the assignee for the purposes of the trust. In a class of cases like the present, in which the creditor has not recovered a judgment before the property is actually sold and turned into money by the assignee, the creditor can undoubtedly come into this Court and claim our aid to obtain payment of his debt from money in the hands of the trustee. *Or perhaps he may*

*levy* an attachment execution upon the money in the hands of the assignee : as such money only represents the property on which he could have specifically levied his execution, had such property remained in specie in the hands of the assignee. But as an unrecorded assignment is not a thing *ipso facto* void, but voidable only at the election of a creditor of the assignor, the creditor must take care that he does no act affirming it. If he does an act affirming it, his election is made, and he is estopped from impeaching the assignment either in this Court or elsewhere. To permit a party to first claim under such a trust, and then to change his ground and assail it, is alike contrary to natural as well as artificial equity.

The principle is clear, then, that a creditor *may* conclude himself from objecting to the omission to record an assignment in trust, in consequence of having elected to *claim under it*. The only difficulty existing in this class of cases being, as to what is to be deemed sufficient evidence of an election to take under the assignment, and to waive the objection, which, if interposed in time, might have invalidated it. In the present case, the act of election to take under the assignment is a single, but it is an unequivocal one. The petitioner, during a year after the making of the assignment, made no attempt to impeach it; and even then, when the assignee had rendered his account, the petitioner filed specific exceptions against its confirmation. Without these exceptions, or without a motion to refer the account to an auditor for adjustment, it would, according to the course of the Court, have been absolutely confirmed. If the petitioner had not meant to come in under the assignment, why should he have come into Court and placed his exceptions on the record to the confirmation of the accounts ?

These exceptions do not in any way complain of the omission to record the assignment. They are predicated on the theory that the accountant had claimed credits, that he was not entitled to demand, and omitted debts with which he was properly chargeable. What did this mean, if the exceptant did not intend to claim under the trust ? One who meant to repudiate the legal validity of the assignment would certainly not have adopted this course. It is true that when the accounts came before the auditor for adjustment, more than nine months afterwards, the exceptant appeared and claimed the funds under the attachment execution issued by him in November 1849. It is true that three months after his exceptions filed he brought his action to recover his debt against the assignor, and recovered a judgment on which his attachment of November 10th, 1849, was founded. Still, his election being once made, was irrevo-

cable. He knew, or he was bound to know, that the assignment had not been recorded in due season, although it was in fact recorded but one day too late. The record of an assignment is a public record, and a creditor is just as much bound to know that an assignment has not been recorded within the period required by law, as an assignee is bound to know his obligation to duly record it. The case of Farnham v. Burroughs, 1 Dickens, 63, is a direct authority illustrating the principle on which this case rests. That was a decree for an account of debts, and for creditors to come in before the Master, and debts to be paid out of the personal estate and real estate devised for that purpose; if deficient, liberty to apply when the defendant, the heir-at-law, an infant, attained twenty-one, to have the deficiency raised out of legal assets descended. The defendant, who was a bond-creditor, came in under the decree, and obtained a commission to prove his debt, but finding the personal estate and equitable assets insufficient, he went no further, but when the infant attained twenty-one, he brought an action against him on the bond. The heir filed a bill for an injunction. Lord Hardwicke held that the defendant having come in under the decree in the cause, had submitted to the terms of it, and had in effect made his election to proceed in that Court, and he therefore enjoined him against proceeding at law.

The case of Adlum v. Yard, 1 Rawle, 163, rests essentially on the same principle. There an assignor made an assignment which contained provisions to delay creditors, and which was therefore void, under the statute of the 13 Eliz. Yet a creditor, having received a dividend under the assignment, was for that reason estopped from questioning its validity in a subsequent attachment issued by him against the estate of the fraudulent assignor in the hands of his assignee. This was not, like the present, the case of a mere formal omission to record an instrument in due season, but a case in which a statute pronounced the deed void, because, in opposition to an express enactment for the suppression of frauds, " any one," says Chief Justice Gibson in that case, " may waive the advantage of a law introduced for his own benefit; and I cannot imagine why creditors may not ratify a contract fraudulent, only as to themselves, *even in anticipation of a benefit.*" " The doctrine of election," says he, " is more analogous to estoppel than confirmation, and an estoppel may arise as well from matter *in pais* as matter of record." In the same case, the same learned Judge denies that the doctrine of election is inapplicable to creditors. It is well, perhaps, to remember, that, in the present case, the opera-

tion of adopting even a strict rule as to the effect of an election, works that which equity most delights in, viz. equality. On the other hand, the success of the petitioner's effort is to give him all the assets to the exclusion of all the other creditors, whose claims against the assignor are equally meritorious. The decree that the law and justice of the case seems to demand of us, is, that the petition of James Murphy be dismissed, and that the account be referred back to the auditor with directions to hear and determine upon Murphy's exceptions, and to award to him a dividend of the assets of the assignor, proportionate to that awarded to the other creditors. We are aware that the District Court may adopt a different view of the effect of Murphy's acts, and that that Court may not regard them as amounting to an election to take under the assignment.

But, according to Weber v. Samuel, we are now acting as a Court of Equity, and have the power to prevent a suitor bound to submit to our decree, from being vexed with other actions arising from the subject on which we adjudicate. For that purpose we can and will award an injunction, if that becomes necessary, forbidding the petitioner to further prosecute his attachment against the assignee. No evil or injustice can arise from this course. If our views of the law are right, then our decision should furnish complete indemnity to the assignee acting in obedience to it. If it is wrong, then it can be corrected, on appeal, by the Supreme Court. On the contrary, if the assignee should be subjected to the judgments of two Courts, one of which might conflict with the other, a state of things might readily arise not creditable to the administration of justice. Nor has the petitioner any just right to complain of this course. He has asked our action to restrain the assignee from making a dividend, which we consider the latter bound to make, the petitioner's application to the contrary notwithstanding. It follows, of course, that the assignee should be protected in doing that which we refuse to restrain him from doing. If authority is required for so plain a proposition, it is furnished by Farnham v. Burroughs, 1 Dick. 63, where Lord Hardwicke enjoined a creditor from proceeding at law to recover against an heir, where he had previously elected to go against the legal and equitable assets of the ancestor, applicable to the payment of the debts of the latter.