CROWELL *v.* MECONKEY.

The want of an appraisement under the act of 16th of July, 1842, is but an irregularity, which may be waived by the acts of the parties, and cannot be set up after the sheriff's deed is acknowledged.

Where two parcels of land were sold by the sheriff under one writ, and the insolvent trustee of defendant procured the sale of one to be set aside for an irregularity which extended to both, the sale of the other being confirmed without objection, and the purchase-money paid to the defendant's judgment creditors, the trustee is estopped contesting the regularity of the sale; and the trustees' affidavit on the motion to set aside the sale of one parcel, is evidence against him in ejectment for the other.

The receipt of the purchase-money by the judgment creditors, with such trustee's permission, is equivalent, in confirming the sale, to a receipt by himself, for they are his *cestuis que trust*.

A. being the creditor of her son, covenanted, in consideration of two bonds, for the amount due, with warrants of attorney to confess judgment, that she would, by wil'

bequeath him such sums of money as might be recovered or secured by such bonds, and that, in case she purchased, any lands which might be encumbered by the judgments to be entered, she would, by will, or some other assurance, devise or convey to him in fee, " all such lands, property and estates which may be so purchased." *Held,* that the scope of the agreement was to secure to the son all the profit which the mother might make by the judgments, and that he was entitled only to the difference between the value of the land purchased at sheriff's sale, and the money she was obliged to pay for the title. That in the proportion this money bore to the value of the land, he had an estate therein.

If a question arises on the evidence of a cause, it is properly left to the jury to decide the cause upon, though neither counsel may have adverted to it during the trial.

Testator gave the beneficial interest of his whole estate to his wife for life, remainder to his children generally of all the personalty and *surplus* remaining at his wife's death. The wife having no other estate than this, bargained with a son who was indebted to her, to convey him the interest which she might acquire from his lands by a judgment confessed. *Held,* that if the indebtedness was to the testator's estate, the title acquired by the mother, under the judgment, was subject to the original trusts of the father's will, and could not be affected by her agreement.

Such a trust is for the children equally, and the amount of their estate depends on the state of their accounts with the trust estate.

In error from the Common Pleas of Chester county.

*April* 9. Isaac Pennock devised the rents, &c., of his real estate to his wife, for life, and all his personal estate, including *ground rents,* bank stock, &c., to her absolutely, "having full confidence that she will leave the surplus to be divided at her decease, justly among my children."(a) He then devised to his two sons two farms, of one of which George W. Pennock became seised thereby, subject to his mother's life-estate, which expired in September, 1844. The testator had five daughters and two sons, but it appeared from charge of the court, that there were but six children entitled in remainder, after the mother's life-estate determined. On the 1st of July, 1842, the plaintiff was appointed trustee of George W. Pennock, an insolvent debtor, and brought this ejectment to recover part of the land devised to him.

The defendant's title was a judgment recovered September, 1841, against George W. Pennock, a *fi. fa.* levy and condemnation, a *venditioni* and return of sale, on the 18th of July, at which plaintiff attended, of all the parcels levied on; the subject of the present action being sold to Martha Pennock, (the widow of Isaac, the testator,) for $10,300, subject to a mortgage of $5000. To this return the defendant, in that judgment, and the present plaintiff, as his trustee, filed exceptions as to one of the parcels not now in contro-

---

(a) In Coates' Appeal, 2 Barr, 129, this effect of this will was decided. There is an error there in stating it to be a " subsequent will revoking others." That which is stated as a former one, was the will of a son of testator, which was used to show title in the complainants. The error, it is believed, is unimportant, as regards the only point there decided.

versy; and among the reasons it was said that the provisions of the act of July 16, 1842, had not been complied with, no valuation or appraisement having been made as there directed, and that de-. fendant had not been afforded the benefit of the provisions of that act. The sale of this parcel was accordingly set aside. On the 4th August, 1842, the sheriff acknowledged the deed for the premises. in question. The defendants proved the payment of $10,124 79 to certain judgment creditors, and costs of suit.

. The parcel, the sale of which had been set aside, was again sold in October, and Mrs. Pennock became the purchaser, for $13,516 59, subject to about $1,600 due on mortgage. This amount was shown to have been applied to judgment creditors, excepting $346, which was paid into court.

The plaintiffs then proved a sealed agreement by Mrs. Pennock, dated May 15, 1842, by which she covenanted, in consideration of George W. Pennock giving her two bonds and warrants of attorney for the amount then due to her, that she would, by her will, give him all such sums of money as should be recovered, received, secured, or obtained by virtue of the said bonds or judgments thereon to be entered; and that, in case she became the purchaser of any part of the lands which should be encumbered by the lien of these judgments, that she would then, by her last will, or by some other assurance, devise, grant and convey to the said George W. Pennock, in fee simple, all such lands, &c., which might be so purchased: to which covenant she bound her heirs, executors, &c. This paper was delivered to Mr. Lewis, and kept by him for George W. Pennock; and the execution of the bonds, &c., for a part of the indebtedness of George W. Pennock to his mother, in consideration of this agreement, exceeding $26,000, was proved.

The plaintiff then read the will of Mrs. Pennock, by which she devised the land in question to and to the use of the defendant in fee, in trust to demise the premises, and pay over the rents, &c., to George W. Pennock during life, so that the same should not be liable to his debts, contracts, and engagements, his receipts to be sufficient discharges therefor; or that he should be permitted to occupy and take the rents and profits during his occupancy or life; and after his death in trust to convey to his appointees by will, and in default thereof, to his widow and descendants, according to the intestate laws; in default of such descendants, to the two daughters of the devisor in fee. Probate was granted on this will in October, 1844. His witnesses also proved that plaintiff was present at both the sales by the sheriff, and at the argument of the exceptions which

he had signed; that Mrs. Pennock had no property but what she derived from her husband, Isaac Pennock; and he also gave evidence of the real value of the property purchased by her at the sheriff's sales. The inventory of the testator's personalty amounted to $110,622 75.

The record of the proceedings in bankruptcy by George W. Pennock was rejected, excepting so much as showed the fact of a decree. The court also permitted the deposition of Martha Pennock, attached thereto, to be read, but the offer of this separated from the record was withdrawn.

BELL, P. J., instructed the jury that the plaintiff had showed a title to recover, unless since it had accrued it had been devested. This was the case by the sheriff's sale, for the want of appraisement under the *vend. ex.* did not render the sale void, it being a defect which the parties must take advantage of before the acknowledgment of the deed. This point was not, however, necessary to decide, since the trustee was present, and knowing of all the sales, to one of which he excepted, he permitted the other to be confirmed.

This would, perhaps, have been enough, but besides that, he had affirmed the sale by permitting the purchase-money to be paid to the judgment creditors, for whom he was trustee. Their receipt of the money by his consent, was a waiver of defects, as much so as if received by himself, they being his *cestuis que trust*. This principle was acted on in Adlum *v.* Yard, 1 Rawle, 171; Wilson *v.* Bigger, 7 Watts & Serg. 125; Bowen *v.* Bowen, 6 Watts & Serg. 504; Stroble *v.* Smith, 8 Watts, 280. So far the plaintiff's title was gone, but that any equitable interest which George W. Pennock acquired by the agreement with his mother passed to his assignee. What that agreement was, and whether it would be enforced in equity, were the questions. That the doctrine as to unconscionable bargains did not prevail, part of the consideration being evidently the natural affection between the mother and son; and besides, this objection was not taken by the parties, but by one who, as trustee, set up another title. The consideration was ample to entitle it to the aid of the court; but the intent of that agreement was, that George W. Pennock should be benefited to the extent the mother was by the judgments confessed: whether or not there was a profit made, was the question. Whatever that was, the plaintiff was entitled to recover the relative proportion of the land.

But there was yet another question. If Mrs. Pennock had no other property than was derived under her husband's will, it had been decided, as to that she was trustee. If the purchase was made

with that property, the trust attached, and she had no title to convey, in which event no right accrued by her agreement. There was then his interest under his father's will in the clear residue of the estate at the death of the mother; no particular division having been made by the testator, George W. Pennock would be entitled to an equal share with the other children, which was one-sixth. The right to that share depended on whether he had not previously received his share of the personalty of his father's estate; as to the proportion of that which he had received, his right was barred.

The validity of the sheriff's sale; whether the plaintiff was estopped from contesting it; the construction of the agreement of May 15th, and in submitting the question of the receipt by George of his share of his father's personal estate, or any part thereof, without evidence and without such question having been raised by the evidence, constituted the thirteen errors assigned.

*Lewis*, for plaintiff in error.—The doctrine of estoppel was not applicable, since there was no obligation in the trustee to require an appraisement, nor can his objection for that defect in the sale of one parcel be construed a waiver as to another, though included in the same writ; for they are as distinct as if sold by several writs. This appraisement is imperatively required by the law, and the stay of all proceedings is directed on the sheriff's return. [BURNSIDE, J.—The want of objection by the parties is a waiver.] The same agreement would apply to the inquisition under the act of 1836, but that can only be by certificate filed, and not by acts *in pais*. Under that as well as this, there may be an objection to the acknowledgment, but the failure to take this was never held to be a waiver. That, and the act of 1705, are no more imperative than this, but they have been so considered in this court; Thompson *v.* Phillips, Bald. 270; Wilson *v.* McVeagh, 2 Yeates, 86; Den *v.* Wright, Peters' C. C. R. 64; 5 Serg. & Rawle, 332; 2 Binn. 80; and a sale without such inquisition is no sheriff's sale, but a private one, Cash *v.* Tozer, 5 Watts & Serg. 526, which also decides there is no waiver by not objecting at the time; Seechrist *v.* Baskin, 7 Watts & Serg. 403. The other ground is untenable: the creditors did not claim under the trust but paramount, and the consequence would be, that a claim of $10 would prejudice other creditors to an indefinite amount. The agreement with the mother had reference to two contingencies; the one a pecuniary profit by the judgments, the other the acquisition of title to the land thereby; the court erroneously treated it as having but the former object.

There was no evidence that George W. Pennock had received his share of his father's personalty, and we claimed to affirm the conversion into land. The proceedings in bankruptcy could not be read in part, and we were entitled to read Mrs. Pennock's deposition.

*P. Frazer Smith* and *Meredith,* contrà.—There is no doubt of the sheriff's authority to sell the land on the 16th of July, for he then had the proper writ in his hands. Then came the act of Assembly, which was solely intended for the benefit of the debtor. It requires as a condition precedent payment of interest then accrued to be made by the debtor, which was not done: but the true ground is, that being for his benefit he may waive it; Shultze v. Deal, 2 Penna. Rep. 273: numerous cases illustrate the same rule. It is entirely different from the case of an inquisition; without that the *venditioni* could not issue, and a sale by the sheriff under a void writ cannot be a judicial sale; but here there was a lawful command, which was executed in ignorance of the law all round, and when the law was known, all parties acquiesced. The act of 1842 was in fact but a part of the stay of execution law under which the conditions are all precedent on the part of the debtor. The other ground is sufficient. An acceptance of the purchase-money is always a confirmation of a sale, as is shown by the cases referred to by the court, and Unangst v. Kraemer, 8 Watts & Serg. 391. Here the land was converted into money, and by reason of his not objecting to the irregularity, $23,000 was paid to those persons whom he represents. The question of a receipt by George, of his share of his father's estate, was not considered raised on the evidence, but it was plainly the fact. He had become indebted to the trustee of the estate, exceeding $26,000, and that trustee had no other property but as a beneficiary for life in the trust property, the very savings of which were trust funds: this amount far exceeded his share. As to the agreement: certainly the rule laid down was but reasonable, viz.: that the profit only was to become George's; in point of fact there was a loss, and to add to that, by carrying off the entire estate which had been paid for out of the trust property, would make the contract an absurd and unreasonable one.

*Randall,* contrà.—There would be no question if there was an agreement to waive the objection, and Shultze v. Deal only rules that a party is bound by his contract. Here was no agreement, and indeed no opportunity to desire an appraisement, for the sale had passed when the law was known. The law is not like the law for stay of execution, but it prohibits a sale *except on conditions;* that

prevents a sale on *compliance* with conditions. There was no argument below on the question of the receipt of any share of the personal estate, nor was there evidence to justify the assumption of our indebtedness to the trust estate before settlement of the accounts. The evidence of indebtedness was to the mother, not to the father's estate.

*April* 24. COULTER, J., (after stating the facts as to the sale and the act of Assembly, and their respective dates).—It was utterly impossible that the existence of the act could have been known in many parts of the state in that time. And its knowledge through the ordinary mode of publication of the laws, could not have been known for months, and it does not appear that there was any extraordinary mode adopted of promulgating this law. It may be presumed that cases exist when sales were made after the passage of the act, and the deeds acknowledged before the existence of the act was known; at least, it seems impossible that the act could have been officially known to the sheriff in this case, or that by any ordinary mode of action he had a chance of knowing its existence at the time of sale. Before stating the construction which the court give to the act of 16th of July, 1842, I beg leave to say, that all persons are presumed to know the law of the country who claim its protection, seek its aid, or abide its judgment, whether it relates to contracts, to property, or to crime. And ignorance or mistake cannot be alleged as an excuse for omission, or as a shield to save when it is broken. But this presumption is founded on the basis, that all people have an opportunity to know what the law is, either by examining for themselves or by consulting those whose business it is to be professionally informed on the subject. The lawgiver who establishes a rule of action or of contract in all civilized countries, has been held to the necessity of making that law public, so that its enactments might be known before obedience to its provisions was exacted. There is one remarkable and distinguished instance recorded, where it was sought in form, at least, to comply with this universal precept of natural justice, and yet not give to the people the information necessary to save and secure them. The example may be found in his conduct who had his laws written and elevated so high that no eye could reach or scan them. Such enactments have all the evils of those retroactive laws which operate upon and impair, or alter contracts entered into upon the full knowledge and faith of the known laws at the time, and which therefore were interwoven

with the contract itself, but which are required to be judicially determined by a rule not promulgated at the time the contracts were made : an exercise of authority, which example cannot render respectable, nor power make just.

But apart from these considerations, the judgment of the court proceeds, on the ground that the act of 16th of July, 1842, was only directory as it regarded the sale, and its non-observance amounted merely to an irregularity, for which the sheriff might be subject to an action, if the defendant in the execution, or those who represent him, suffered any injury or damage in consequence of it, provided the sheriff knew or might have known the existence of the act, and disregarded its provisions. But this irregularity may be waived by the acts of the defendant in the execution, or those who represented him. The proper time to have made the objection, was at the acknowledgment of the sheriff's deed; for it appears the existence of the law was then known. The irregularity in this case cannot be assimilated to the want of an inquisition, for the purpose of ascertaining whether the yearly rents and profits of the land, beyond all reprises, will pay the debt, &c., in seven years. Because, under such circumstances, the writ of *venditioni exponas* would be void, the officer having no power to issue it, and it could therefore confer no authority on the sheriff to make the sale. But in this case the writ was good, and the sheriff had authority to make the sale; and that was sufficient to protect the purchaser, in the same manner and for the same reason that he is protected in all other cases of irregularity or error in the process or judgment.

In addition to this, however, the party waived the defect or irregularity by his acts.

The plaintiff was present at the sale, and made no objection whatever; and at the next court appeared and filed his affidavit in conjunction with the defendant in the execution, of the passage and existence of the act of 16th July, 1842, and that no inquest had been held for the purpose of appraising another tract of land, sold as the property of the defendant in the execution on the same *venditioni exponas*, and stating also, that the last-mentioned tract had sold for too small a price, and, thereupon, moved the court to set the sale of that tract aside, which was done; but the sale of the land covered by this action of ejectment was confirmed without objection; the purchase-money paid, and a deed made to the purchaser. The plaintiff is, or was trustee for the judgment creditors, who received the purchase-money of this land, but he now seeks to strip himself of that character and stand as the naked

trustee of those who received nothing. But he cannot be allowed to blow hot and cold. He made his election as trustee of all the creditors to let the sale stand, and he must abide by that election. Innocent purchasers cannot, and must not be made the sport of such tricks; even if the sale had been void, the reception of the purchase-money would have made it valid; Adlum v. Yard, 1 Rawle, 171; Furness v. Ewing, 2 Barr, 479. It is true he did not receive the money himself. But those for whom he acted and whom he represented did receive it; and therefore the spirit of these cases reach him. But it would be of no moment even if no adjudicated case covered the exact circumstances. For the law is a science and not merely an art. Its principles expand as new developments require their application,—not altered but extended in their sphere of usefulness. The principles themselves being founded on elevated morals and pure good faith, are as extensive and vigorous as the principles of mischief, which it is their province to counteract. An estoppel prevents a man from alleging or setting up the truth, to the injury of another, when it is in contradiction to his former acts and allegations. An estoppel rests on the principle, that every man is presumed to speak and act according to the truth and fact of the case, and the law denies him the right to contradict such reasonable presumption; per Nelson, J., 11 Wend. 117. The plaintiff had a full opportunity to object to the proceedings before the deed was acknowledged, but sealed his lips and permitted the purchaser to pay his money, and the deed to be acknowledged without warning or notice, and thus waived all objections.

The construction of the writing executed by Matthew Pennock, dated the 15th May, 1842, belonged peculiarly to the court, and there was nothing in the parol evidence in the cause, which ought to have withdrawn the instrument from the court; and in the judgment of this court they gave its true interpretation to the paper.

The facts submitted by the court to the jury, in relation to George having received his full proportion of the personal estate of his father, and which is assigned for error, fairly arises out of the evidence in the cause, and whether it was argued and contested by the counsel or not, is of no consequence. It is the duty of the court to instruct the jury upon all the evidence, and to call their attention to the material facts which ought to control or affect the issue. The value of the instruction depends upon its being full and commensurate with the cause, as well as upon its accuracy.

This court cannot say whether a particular point was contested by counsel below, or not; it is sufficient if the evidence warrants

the course pursued by the court. It would not be error if the court omitted to instruct on a point not made, but it is a *non sequitur* that it is error to instruct, when the evidence requires and authorizes it, although the point was not made by counsel.

There is nothing in the error assigned as to the admission in evidence of that part of the record which contained the affidavit of Crowell and Pennock, for the purpose of having the sale of part of the property set aside, and the motion to that effect, and the proceeding of the court thereon. This evidence was so clearly relevant and proper, that it is not deemed necessary to say any thing except that it was the act of the plaintiff on record, in relation to the process on which the sale was made, and was part of the *res gestæ*, inseparably connected with the execution itself.

There is nothing in the other errors assigned, which are quite subsidiary in importance and character, and require no special notice, under the aspect in which this court have viewed and determined this cause.                    The judgment is affirmed.