Alfred V. Scott, Plaintiff in Error, *vs.* Samuel C. Edes, Assignee, &c., Defendant in Error.

WRIT OF ERROR TO THE DISTRICT COURT OF RAMSEY COUNTY.

Creditors may, by their own acts, confirm deeds or instruments, void as to them; and where a creditor receives a benefit under an assignment, or becomes a party to it voluntarily, *with a full knowledge of its provisions, or circumstances rendering it fraudulent as to creditors,* he is thereby estopped from afterwards impeaching it.   Mere ignorance of the contents of the deed, or of the circumstances rendering it void, will not avail to protect them from their acts of confirmation, but the Courts will carefully scrutinize the *means of knowledge* possessed by the party pleading ignorance, and consider whether he has been guilty of laches in neglecting to avail himself of information within his reach.   If it appear that he had notice of facts which should have put him upon inquiry, he will be bound to the same extent as though he had received actual notice of the facts of which he pleads ignorance.   But otherwise, if actual *fraud* had been practiced to induce the acts of confirmation.

The acceptance of dividends under an assignment, by a creditor, is an assent to, and confirmation of such assignment by him; and if he afterwards discover its fraudulent character, he must offer to return whatever he has received under it, before he can be in a position to dis-affirm it.

The following are the points and authorities relied upon by the Counsel for the Plaintiff in Error:

48

We think the Court erred in sustaining the demurrer. The indenture "A," executed on the 14th of September, 1857, by C. W. Pairo, to the Plaintiff in Error, as set forth in the complaint, was declared by this Court, in the case of *Greenleaf vs. Edes*, heard at the December term, 1858, to be fraudulent and void as to the creditors of the assignor, upon the ground that it authorized the assignee to sell the assigned property on *credit*. It is claimed, however, that the Plaintiff in Error received dividends on his claim against Pairo & Nourse from the assignee, under said Indenture "A," and otherwise recognized said assignment, whereby he is precluded from questioning the validity of said assignment. We admit that where a creditor receives a benefit under an assignment, or becomes a party to it voluntarily, *with a full knowledge of its provisions, or circumstances, rendering it fraudulent as to creditors,* he is thereby estopped from afterwards impeaching it. This is upon the principle that the creditor by such acts *confirms* the assignment, and when thus confirmed, he cannot turn round and impeach it as fraudulent, for reasons which were known by him to exist at the time he thus confirmed it.

But the receiving a benefit, or doing any other act which would otherwise operate as a confirmation of the assignment, will not have that effect, if at the time thereof the creditor was ignorant of the facts rendering the assignment fraudulent. *Van Nest vs. Yore*, 1 *Sandford Ch.* 4; *Adlum vs. Yard*, 1 *Rawl's R.*, 163, 177; *Stuyvesant vs. Hall*, 2 *Barb. Ch.* 158; *Williams vs. Sorrel*, 4 *Ves.* 389; *Bushel vs. Bushel*, 1 *Sch. & Lef.* 90; *Baker vs. Washington*, 5 *Stew. & Port.*, 142; *Tutum vs. Young*, 1 *Porter*, 298; *Tyler vs. Hammond*, 11 *Pick.*, 193; *Shultz vs. Moore*, 1 *McLean*, 520; *Tilton vs. Hunter*, 24 *Maine* 29; *Leiby vs. Wolf*, 10 *Ohio*, 83; *Bates vs. Narcross*, 14 *Pick.*, 224; *Raynor vs. Wilson*, 6 *Hall*, 473; *Murray vs. Ballou*, 1 *John. Ch.* 556; *Keller vs. Nutz*, 5 *So. R.*, 246; *Lightner vs. Mooney*, 10 *Watt*, 412; *Crockett vs. Maguire*, 10 *Missouri*, 34; 2 *Mason, U. S. Circuit Court Rep.*, 536.

The following are the points and authorities relied upon by the Counsel for the Defendant in Error:

*First.*—In support of the demurrer in this cause the first point made by the Defendant in Error is that the Plaintiff in Error is *bound* to *know* the terms of a deed, to which he has assented and virtually made himself a party, and is *estopped* from pleading ignorance of its provisions. If he did *not* know that the instrument of September 14th, 1857, was fraudulent and void as to the creditors of Pairo & Nourse, it was a *wilfull* and *voluntary ignorance* of which it is now too late for him to take advantage. If he *did not* have *actual* notice of the fact that it authorized a sale of the assigned property *on credit*, he *did* have notice of facts which should have put him upon inquiry and that would have given the information. This alone, upon well recognized principles of law, would preclude him from pleading ignorance of the instrument in question.

The Plaintiff in Error is *equitably estopped* from pleading ignorance of the first deed of assignment, having *admitted* its validity by signing the instrument of October 24th, 1857, upon the faith of which admission the Defendant in Error has *acted* by paying him two dividends. *Dezel vs. Odell,* 3 *Hill* 219 ; 2 *Smith's leading cases, page* 561, *Title, Estoppel in Pais ;* 1 *Greenleaf's Evidence, Sec.* 22, 23 *and* 207, *and cases cited ; Parsons vs. Gloucester Bank,* 10 *Pickering,* 533.

By signing the proposition and receiving dividends, the Plaintiff became *virtually* and in fact a party to the deed of assignment. All who assent to the terms of a deed of assignment are bound by all its provisions. *Green vs. Morse,* 4 *Barb.* 332.

*Pratt vs. Adams,* 7 *Paige* 615. The Plaintiff must be presumed to have known and intended the legal consequences of his own acts, and nothing but *accident, mistake* or *fraud,* according to the equitable definition of the terms will relieve him, none of which grounds of relief are set up in the answer. *Merrill vs. Englesby,* 28 *Vt.* 2d *Williams* 150; *Geissee vs. Beal,* 3 *Wis* 367; *Adlum vs. Yard,* 1 *Rawle, Penna.* 167; 13 *Wend., Hone vs. Henriquez* 240 ; *Dual vs. Barnes,* 1 *Md. Ch. Dec.* 127; *Moal vs. Buchanan,* 11 *Gill & Johns.* 314 *Md.; Lanahan vs. Latrobe,* 7 *Md. Rep.* 268 ; *Edwards vs. Mitchell,*

1 *Gray* (*Mass.*) 239; *Small vs. Sprout*, 3 *Met.* 303; *Henriquez vs. Hone*, 2 *Ed. Ch. Rep.* 120; 13 *Wendell* 240.

As to the effect of becoming a party to the assignment— see *Lippencott vs. Barker*, 2 *Binny* (*Penn.*) 174; *Burrows vs. Alter*, 7 *Mo.* 426; *White vs. Banks*, 21 *Ala.*, 705; 3 *Peters S. C. Rep.* 411, *Clay vs. Smith; Averill vs. Louck*, 6 *Barb. S. Rep.* 470; 7 *Paige* 615, *Pratt vs. Adams;* 4 *Barb.* 332, *Green vs. Morse.*

Smith & Gilman, Counsel for Plaintiff in Error.

Wm. Hollinshead and Geo. L. & E. A. Otis, Counsel for Defendant in Error.

*By the Court*—Atwater, J. The only question which we deem it necessary to examine in this case is, whether the Plaintiff in Error has confirmed the deed of trust executed by Charles W. Pairo on the 14th of September, 1857, to Samuel C. Edes, Defendant in Error, so as to preclude him from now asserting that the same was void as to creditors. The complaint alleges that Alfred V. Scott was a creditor of the said Pairo & Nourse at the time of the execution of the deed of trust or assignment for the benefit of creditors. That on the 24th day of October, 1857, Pairo & Nourse, having reference to the indenture above mentioned and to the Plaintiff (Edes) as trustee under and by virtue of the same, addressed to the Defendant (Scott) a circular and proposition in the words and figures following, viz:

"We beg leave to call your attention to the annexed proposal, which was submitted to our creditors at their last meeting, and generally approved; but inasmuch as many of them were not present, and may not be fully informed upon the subject, we deem it proper and advisable to bring it to their notice in the present form. The extent of the authority proposed to be given, is simply to permit the trustee, with the consent and approval of some one selected by the creditors themselves, to liquidate the claims of those, *and of those only who prefer so to do*, by giving them lands and other securities,

not readily available at present, upon such terms as may be mutually agreed upon, and without prejudice to the claims of any creditor who may be unwilling to accept of such settlement. On the contrary, it must be evident at a glance, that every arrangement so made must have the effect of strengthening and securing more fully all claims remaining unsettled, and, also, of enabling the trustee to liquidate them more speedily. If you approve of the plan proposed, you will please signify your assent thereto by signing the annexed paper and returning to us at your earliest convenience.

"Very respectfully,

"PAIRO & NOURSE.

"WASHINGTON, October 24, 1857."

The following it the proposition referred to, viz:

"Whereas, it has been suggested and desired by several creditors of Pairo & Nourse, that in many instances settlements may be made by a direct application of their assets, and that such an arrangement, if carried out, would greatly facilitate the liquidation of the concern; and whereas, the trustee does not consider himself sufficiently authorized to make such arrangements except at his own risk, and feels desirous that he should have some general expression of the wishes of the creditors in order to justify him in so doing—now therefore, we, the undersigned, hereby agree and consent, so far as we are concerned, that the trustee shall be permitted and authorized to liquidate the claims of those who shall be willing to accept of such settlement, by transferring to them lands, bonds and other securities, on such terms as, in his judgment, shall be just and reasonable, with due regard to the claims of the creditors generally, and especially of those who prefer to await the final liquidation of the trust; provided, that in all transactions made in pursuance of the authority hereby given, no settlement shall be valid or binding except with the written consent of John H. Wheeler, or some other person selected, who shall represent the creditors for that purpose.

"WASHINGTON, October 24, 1857."

The complaint also sets forth two receipts, of which the following are copies, viz:

"WASHINGTON, January 24, 1858.

"Received of S. C. Edes, assignee of Pairo & Nourse, one hundred thirty-one 37-100 dollars, being the first dividend of ten per cent. on my claim against them, as per bank book, $1,313 70.                    ALFRED V. SCOTT."

"WASHINGTON, January 8, 1859.

"Received of S. C. Edes, assignee of Pairo & Nourse, one hundred and five 9-100 dollars, being the second dividend of eight per cent. on my claim against them, as per my account on their books.

"ALFRED V. SCOTT,
        "By W. P. WILLIAMS."

This last amount was paid on the draft of Scott upon Edes, and receipted by Williams as above written. The Plaintiff in Error commenced a suit against Pairo &. Nourse to recover his debt against them, and on the 14th of May, 1859, levied an attachment on two of the lots conveyed to Edes by the deed of trust from Pairo & Nourse of September 14, 1857. The Defendant in Error then commenced his action in the Court below, to cancel the said attachment of record, and remove the lien or cloud upon his title thereby occasioned.

The answer admits the execution of the papers above cited, by Scott, and the receipt of the two dividends therein specified, but avers that at the time the said proposition and receipts were signed, and the dividends received by him, he was ignorant of the contents of the trust deed to Edes of date of September 14th aforesaid, and had never read or seen the same, and did not know that it contained any provisions rendering it invalid as to creditors. To this answer the Plaintiff demurred, and the demurrer was sustained, and the Defendant brings writ of error to this Court.

The deed of trust above referred to, of September 14, 1857, contained a provision authorising the assignee to sell on credit, and was declared void as to creditors, by this Court, in *Green-*

*leaf vs. Edes*, 2 *Min. R.*, 264. On the 9th day of January, 1858, Pairo & Nourse executed and delivered to the said Edes, another deed of trust, for the purpose, as alleged in the complaint, of confirming the first named indenture, and of giving effect to the trusts thereby created. This last indenture was in terms similar to the first, although covering more property, and omitting the authority to the trustee to sell on credit. The deed first executed was recorded in Ramsey County, on the 21st of September, 1857, and the second was recorded in the same county on the 20th of February, 1858.

That creditors, by their own acts, may confirm deeds or instruments, void as to them, will not be disputed. In the language of the Counsel for the Plaintiff in Error, " we admit that where a creditor receives a benefit under an assignment, or becomes a party to it voluntarily, *with a full knowledge of its provisions or circumstances rendering it fraudulent as to creditors*, he is thereby estopped from afterwards impeaching it. " And we presume that no one would contend, that the acts of the Plaintiff in Error, as set forth in the complaint, in confirmation of the trust deed, or deeds of Pairo & Nourse, if done with knowledge of their contents, would not conclude him from objecting to their validity. He contends however, that since he was ignorant of the fact, that the first trust deed of Pairo & Nourse contained a clause rendering it void, notwithstanding his confirmatory acts, he is not estopped from treating it as void as to creditors.

We are well satisfied that the position of the Counsel for the Plaintiff cannot have the broad application claimed for it. Mere ignorance of the existence of a certain fact, will not of itself justify, or relieve from the consequences of a course of action based upon the assumption of the non-existence of such fact. It is true, that from the unguarded language of some of the authorities, it might be inferred, that where the question of the knowledge of a particular fact, affected the rights of a party, Courts will inquire simply as to the naked fact of the existence of such knowledge, in the party to be affected by it. A moment's reflection, however, will suffice to show that such a rule cannot obtain, as it would produce the most pernicious

consequences. If such a plea were to protect parties from the consequences of their conduct, they would always be voluntarily ignorant in regard to facts, of which they had the amplest means of informing themselves, and are culpably negligent in failing to obtain information. Where the question above referred to is raised, and becomes important, Courts will carefully scrutinize the *means of knowledge* possessed by a party where he pleads ignorance, and consider whether he has been guilty of laches in neglecting to avail himself of information within his reach. If so, actual ignorance will not avail to protect him from the legitimate consequences of his own acts.

What are the facts in the case at bar as presented by the pleadings? Pairo & Nourse having made an assignment for the benefit of creditors on the 14th of September, 1857, on the 24th of October of the same year, addressed to the Plaintiff in Error, as one of their creditors, a written proposition, requesting his assent, with that of other creditors, to a certain disposition of the assigned property, by the Trustee. Then, at least, if not before, the Plaintiff in Error was notified of the assignment that had been made, and that the creditors of Pairo & Nourse, or some of them, had already been consulted in reference to the action of the assignee under it. And in order that all might *be fully informed upon the subject*, the matter was brought directly home to the notice of each, by the proposition submitted. And this proposition contained a distinct agreemeent and consent on the part of the creditors signing the same, that the trustee should proceed under the assignment, to dispose of certain property conveyed by the trust deed, in the manner suggested by Pairo & Nourse. Now, there was of course no obligation on the part of the Plaintiff in Error to sign the proposition submitted to him. It was his own voluntary act, and no coercive measures were taken, or motives offered, to induce him to consent to the proposition. And if he chooses to assent to the proposal, without informing or seeking to inform himself of the contents of the deed of trust, that is his own matter. But if so, he must be held to the consequences of his own act. And if those consequences be

an affirmance on his part of the conveyance to Edes, he can scarcely expect the interference of the Court to relieve him from the prejudicial effects of his own negligence. It is not claimed on the part of the Plaintiff in Error that any false representations were made to him by Pairo & Nourse, or any person, with reference to this assignment, nor that there was fraud in fact in making it, nor that he was misled in any manner in reference to it. He simply claims that his action was based on the presumption that it was a valid assignment, and, it having been declared invalid, such action shall in no respect conclude him from treating the assignment as totally void. He brings to his aid no equities whatever, but does present to the Court an instance or example of great negligence in (indirectly) approving of an instrument, of the contents of which he declares he knew nothing, and of which it does not even appear that he ever sought to inform himself. If the Plaintiff in Error did not have actual notice of the contents of the first deed of assignment, he certainly had notice of facts which should have put him upon inquiry, and in such cases, the rule of law holds him liable to the same extent as though he had received actual notice of the facts of which he pleads ignorance. (*Williamson vs. Brown*, 15 *N. Y. Rep.* 354, *and cases cited.*)

The Plaintiff in Error claims that his action in signing the proposition referred to, and in accepting the dividends under the assignment, was based upon the supposition that the assignment from Pairo & Nourse to Edes was a valid assignment, that he was justifiable in entertaining such belief, and the instrument having been declared void, no assent to the transaction can be implied, or have any binding force from his action in the premises. In other words, that the Plaintiff in Error had the right to suppose that the conveyance from Pairo & Nourse to Edes was by an instrument of such a nature as the Courts would sustain, whenever and wherever attacked by creditors, and if the contrary should be held, then he should be absolved from the natural consequences of his own acts, so far as they regarded the assignment. Such is not the language of the Counsel, but seems a proposition justly deducible from his argument. It is not, however, consonant with sound reason or

legal authority. It would be a violent presumption to suppose that these instruments are usually drawn (in this State, at least) with sufficient accuracy to stand the test of a judicial examination; nor are we aware of any rule of law which relieves a party from the consequences of his assent to, or ratification of such an instrument, though the Courts should declare it void as to creditors. The important question for the Plaintiff to decide was, whether *he* would sanction and ratify the conveyance, whatever view the Courts might take of it, or however fraudulent or invalid it might in fact be. And as the assignor himself could not claim the conveyance to be void, and ask to have the same set aside, so neither can any party who has fully ratified the same. Both stand in the same position, and are subject to the same liabilities and restrictions.

On the argument, some stress was laid on the fraudulent character of the assignment in question, and of measures adopted by the Defendant, of which the Plaintiff had no knowledge, and had no reason to intend, at the time of the doing of the acts which are claimed as a ratification of the conveyance from Pairo & Nourse to Edes. We would not be understood as saying that had *actual* fraud been practiced to induce the Plaintiff in Error to sign the proposition and accept the dividends, that he would be bound by those acts. Not only was no fraud used to cause the Plaintiff to adopt the course he pursued, but the acts of Pairo & Nourse, so far as presented by the record, seem to have been done in good faith, and with reference to the best interests of the creditors. Nor was the assignment itself declared void as to creditors, for fraud in fact, but in law. And without entering into any examination of the precise meaning of the terms, which has been the subject of much discussion, we consider the distinction sufficiently obvious for our present purpose. Probably the Plaintiff in Error never dreamed that the assignment was void on account of the provision authorising the trustee to sell on credit, until this Court so declared it. The objection comes too late to entitle it to much weight.

The case of *Bernheimer vs. Marshall & Co.*, 2 *Min. R.* 78,

is in one respect entirely analagous to the one at bar, and the point upon which the case turned, was the same as in this. The Appellant in that case, had paid a draft on him, without having seen it, which he afterwards discovered to be a forgery, and sued Marshall & Co. to recover back the money. The principal argument urged in behalf of the Appellant in that case was, that having never seen the draft when he paid it, Bernheimer did not come within the general rule, that the acceptor of a forged draft cannot set up the forgery to protect himself from the consequences of his acceptance. But the Court were unanimously of the opinion that such fact constituted no defence, and having voluntarily paid the draft without sight, he must abide the consequences of his own neglect. And it requires but little reflection to see that the establishment of any other rule by courts of justice would lead to the most pernicious consequences. Cases would constantly arise where the plea of ignorance would be interposed in regard to matters of which it would be the clearest duty of the party to inform himself, and he thus be permitted to take advantage of his own laches. In the proper administration of justice it is often as important that men be held responsible for their ignorance, as for their actual violation of law, and disregard of known duties.

That the acceptance of dividends under an assignment, is an assent to, and confirmation of such assignment by the creditor has been uniformly held. *Merrill vs. Englesby*, 28 *Vt.* 150; *Geise vs. Beal*, 3 *Wis.* 367; *Adlum vs. Yard*, 1 *Rawle* 163; 11 *Gill & Johnson*, 314; *Lanaham vs. Lathrop*, 7 *Md. Rep.* 268; 7 *Paige* 615. Indeed, the counsel for the Plaintiff in Error, concedes the proposition as a general rule, but claims that it does not apply to the case at bar, inasmuch as the Plaintiff was ignorant of the contents of the trust deed at the time he accepted the dividends. As the Court hold this objection not well taken, the rule consequently applies to the Plaintiff in Error, and he is estopped from denying the validity of the assignment, and cannot be permitted to attach the assigned property for the purpose of satisfying the balance of his claim.

But there is another principle, or rather, another reason

growing out of the principle above discussed, which, although not urged upon the argument, we consider equally fatal to the Plaintiff's right of recovery ; the fact namely, that he has not offered to return the money received under the assignment. The creditor here takes a benefit under the assignment, and then claims that the instrument is null and void as to him. Having derived some, (and perhaps all) the advantage he can from it, he seeks to destroy it, with the hope of securing a greater benefit, if he succeeds in this attempt.   The doctrine is well settled, that the party who would disaffirm a fraudulent contract, must return whatever he has received upon it.   The reason of the rule seems to be, that by receiving a benefit under such contract, he thereby becomes *pro tanto*, a party to, or a participant in the fraudulent transaction, from which he must show himself wholly clear, before he is entitled to be heard in Court. It is a rule founded on the plainest principles of justice and equity, and which cannot be relaxed by Courts of justice.   In this respect, the case at bar is entirely analagous to that of *Lemay vs. Bibeau, 2 Min.* 291, and the ruling in that case is conclusive in this.

The counsel for the Plaintiff in Error urges, that " the dividends reduced the Plaintiff's claim that much, and it was what he was entitled to, and could have seized and held notwithstanding the assignment." But he was not entitled to them *under the assignment*, if the position of the counsel is now correct, that that instrument is void, and it was under the assignment that he received them.   And although he might perhaps have seized them, as remarked, notwithstanding the assignment, yet he chose to waive that right and receive them under the assignment, and must now be bound by the legal consequences of that act, until he purges himself from all complicity or connection with the fraudulent conveyance by an offer to return whatever he has received under it.   It is admitted that the acts of the Plaintiff in signing the proposition, and receiving the dividends, would have been a confirmation of the assignment, had the Plaintiff known the contents of the trust deed.   But he did know the contents before he commenced this suit, and with that knowledge he here and now

seeks to justify his course in accepting the dividends, and also in proceeding adverse to the conveyance under which he received them. It was in his power, and his first duty, if he would avoid the assignment, to offer to return what he had re ceived under it, and the plea of want of knowledge cannot pre-vail when he *now* justifies the acts, which it is admitted would have estopped him, had he then possessed the information which he had when he commenced this action. The judgment of the Court below must be affirmed.