Frierson, ex'r, et al vs. Branch, ex'r.

---

FRIERSON, ex'r, et al. vs. BRANCH, ex'r.

| | |
|---|---|
| 30 | 453 |
| 56 | 464 |
| 30 | 453 |
| 65 | 383 |
| 30 | 453 |
| 73 | 48 |

1. ELECTION: *The doctrine of applies to creditors claiming under on assign-ment.*

   A creditor who elects to accept the benefit of a provision contained in a deed of assignment, cannot attack provisions contained in it in favor of other creditors on the ground of fraud. He must either accept or reject it *in toto.*

2. TAXES, TAX-SALES, ETC.: *Rights and duty of cestui que trust in regard to.*

   If the taxes on land embraced in a deed of trust remain unpaid; any bene-ficiary may pay them, and claim reimbursement out of the trust fund, but he could not permit the land to be sold for taxes, and acquire a title under the sale.

Frierson, ex'r, et al vs. Branch, ex'r.

APPEAL from *Desha* Circuit Court in Chancery.

Hon. —————, Circuit Judge.

*L. A. & X. J. Pindall,* for appellants.

The doctrine of election applies only where it is necessary for substantial justice. 2 Sto. Eq. Ju., 1077, 1088 ; *Birmingham* v. *Kirwan,* 2 Schoales & Lefroy, 449-50. Not against creditors enforcing legal claims Sto. Eq., 1090 ; 1 Swanston, 407, and authorities. A court may settle equities amongst beneficiaries Sto. Eq., 188, 184, 1038-9 ; 2 Har. on Frauds, 89 ; *Pinneo* v. *Hart,* 30 Mo., 661 ; *Star* v. *Dugan,* 22 Md., 58 ; *Mandell* v. *Peay,* 20 Ark., 325 ; 17 Md., 229 ; (*Young* v. *Nutwell,*) 16 Ohio St., 366 ; 14 Pa. St. (Greenfield's estate.) No trust on appellants to pay taxes. Notes to *Marsh* v. *Lee,* 1 Ld. Ca. in Eq., 605 ; *Adams* v. *Buchanan,* 49 Mo., 70.

*W. G. Weatherford,* for appellee.

The doctrine of election applies. Sto. Eq., sec., 1077 ; *Birmingham* v. *Kirwan,* 2 Sch. & Lef., 449 ; *Swanson* v. *Tarkington* 7 Heisk., (Tenn.) 615 ; *Adlum* v. *Yard,* 1 Rawl., 163 ; Hill on Trustees, sec. 337 ; Perry (do) 593 ; *French* v. *Shotwell,* 5 John ch. 567 ; *Shufelt* v. *Shufelt,* 9 Paige, 146 ; *Cole* v. *Savage,* 10 (ib)., 591 ; *Pratt* v. *Adams,* 7 (ib)., 617 ; *Green* v. *Morse,* 4 Barbour, 332.

ENGLISH, CH. J. :

On the 11th March, 1867, Thomas G. Martin executed a deed of trust to Joseph Branch on certain tracts of lands in Desha County, amounting to 320 acres, to secure the payment of a number of debts therein specifically mentioned and described, and among them two notes to Martin & Branch for about eight thousand dollars and the interest due thereon.

The deed provides that the trustee should take possession of the lands, and apply the rents and profits first to the payment of a note due to S. D. Frierson, one of the creditors named in the

deed, for $936, and then to the payment of the other debts secured by the deed, and if all the debts should not be paid within two years from the date of the deed, then the trustee was empowered to sell the lands, and pay all the debts, and if the proceeds of the sale were not sufficient to pay the debts in full, he was to pay on them *pro rata*, etc.

In June, 1870, Mary P. Branch, the executrix of Joseph Branch (the trustee in the deed) filed a bill in the Desha Circuit Court against Thomas G. Martin, the maker of the deed, the heirs at law of Joseph Branch, deceased, and creditors named in the deed, etc., alleging in substance :

That her testator, Joseph Branch, in his lifetime, and one Geo. W. Martin, were partners in business, under the firm name of Martin & Branch.

That Thomas G. Martin was indebted to said firm in a large amount evidenced by two notes, which are described and exhibited, to secure the payment of which, as well as certain other debts, he executed the deed of trust above described, which is set out and exhibited.

That soon after the execution of the trust deed, George W. Martin, one of the firm, died, leaving said Joseph Branch as surviving partner, entitled to the assets, and liable for the debts of the firm. That in November, 1867, said Joseph Branch died, before he had disposed of the lands conveyed to him by the trust deed, and that complainant had been appointed, and duly qualified, as his executrix, in Tennessee, etc. That it was incumbent on her to close up the estate, that the debts secured by the deed of trust were unpaid, there was no administration on the estate of Joseph Branch in Arkansas, and that his heirs were minors, etc.

Prayer that a commissioner be appointed to sell the lands, and the proceeds applied in accordance with the terms of the deed of trust.

One of the notes executed by Thomas G. Martin to Martin & Branch is for $5,395.15, dated January 8th, 1859, payable twelve months after date, and the other $3,840.54, due one day after date, and both bearing ten per cent. interest. These are the notes made exhibits to the bill, and alleged to be secured by the trust deed to Martin & Branch.

By an amendment to the bill it was shown that Thomas G. Martin had been adjudged a bankrupt before the filing of the original bill, and discharged from his debts, and that his assignee, who was made defendant, had made no disposition of the lands covered by the trust deed, etc.

On the 3d of May, 1871, after answers, etc., had been filed, the court appointed a commissioner to sell the lands, and he afterwards reported a sale to Frierson and Mayes for $1,525, and by final decree, November 8th, 1873, the proceeds of sale were distributed *pro rata* among the creditors secured by the deed, a ratable share being allowed upon the notes to Martin & Branch; and the executrix of S. D. Frierson, and the executors and executrix of S. F. Mayes, creditors, and James M. Mayes, in his own right, who by answer and cross bill contested the Martin & Branch claim as fraudulent, etc., appealed.

In the deed of trust a debt to S. D. Frierson of $936 was secured, as above shown, and the appellant, Mary M. Frierson, his executrix, represented this debt in the Court below.

The deed of trust also secured a note to S. F. Mayes for $500, and this debt was represented in the court below by the appellants, John M. Mayes, James M. Mayes, and Mary Mayes, executors and executrix of S. F. Mayes.

The appellants filed joint and several answers and a cross bill, in which they alleged, in effect, that the notes executed by Thomas G. Martin to Martin & Branch were without consideration, and put into the deed of trust in fraud of the claims of

other creditors provided for by the deed, and the appellants insisted that the debts represented by them, and other disputed debts, should be paid out of the proceeds of the sale of the trust lands, to the exclusion of the notes executed to Martin & Branch.

Could the appellants claim under the deed, and at the same time attack and defeat a provision made by it for the benefit of other creditors? In other words, could they be permitted to claim under the deed, and yet allege a fraud in its execution which would avoid it on a bill brought by them, or any other creditor who did not think proper to claim the benefit of the deed, for the purpose of setting it aside?

This question involves the doctrine of election.

"An election, in equity, is a choice which a party is compelled to make between the acceptance of a benefit under an instrument, and the retention of some property already his own, which is attempted to be disposed of in favor of a third party, by virtue of the same instrument. The doctrine rests upon the principle that a person claiming under an instrument shall not interfere, by title paramount, to prevent another part of the same instrument from having effect according to its construction; he cannot accept and reject the same instrument. It is a doctrine which is principally exhibited in cases of wills; but it has been applied, also, to cases of voluntary deeds, to cases of contracts for value resting upon articles, and to contracts completely executed by conveyance and assignment." Bisphams Pr. Eq., sec. 295.

The earliest cases in which the doctrine was applied in English jurisprudence (says Judge Story) seem to have been those arising out of wills; although it has since been extended to cases arising under other instruments. 2 Story Eq. Jurisp., sec. 1079. See *Streatfield* v. *Streatfield*, 1 Leading Cases in Equity. (Hare & Wallace's notes) 273, where English and American cases are collected and reviewed.

In *Birmingham* v. *Teirwan*, 2 Schoales & Lefroy, 448, the question was whether the widow of the testator, could claim her dower out of the whole estate as against creditors and the principal legatee, and at the same time take a provision made for her by the will.

The Lord Chancellor (Redesdale) said: "The general rule is, that a person cannot accept and reject the same instrument, and this is the foundation of the law of election, on which courts of equity, particularly, have grounded a variety of decisions, in cases both of deeds and wills, though particularly in cases of wills: because deeds, being generally matter of contract, the contract is not to be interpreted otherwise, than as the consideration, which is expressed, requires; and voluntary deeds are generally prepared with greater deliberation, and more knowledge of pre-existing circumstances, than wills, which are often prepared with less care, and by persons uninformed of circumstances, and sometimes ignorant of the effect even of the language which they use. In wills, therefore, it is frequently necessary to consider the general purport of the disposition, in order to extract from it what is the intention of the testator. The rule of election, however, I take to be applicable to every species of instrument, whether deed or will, and to be a rule as well of law as of equity." But the Lord Chancellor held, on looking at the whole will, that the provision made by the testator for his wife, was not intended to be in lieu of dower.

In *Freke* v. *Barrington*, 3 Brown's Ch. Rep., 275, the question of election arose upon a deed, and the Master of the Rolls is reported in the text to have said: "It is now settled that no man can claim under a deed, or will, without confirming the instrument under which he claims; therefore William could not be entitled to take any benefit of the settlement of 1872, without confirming that settlement."

In a note the Master of the Rolls is reported to have said: "He did not at all mean to impeach the rule of election, which had been insisted upon in argument for the plaintiff, but on the contrary, whatever doubts might have been held formerly, whether a person should be bound to elect under a deed, as well as under a will, it was now established, and, in his opinion, on very good grounds. But that this was not a case of election, and if it were, that William, the grand son, had made no election to bind him; if he had, the plaintiff should either have the thing, by election, the party had taken upon him to convey, or a compensation for it. That this was a case of a condition expressed by a deed; and that whatever intention might be entertained beside or contrary to that expressed, he could not violate the deed to get it; nor could he judicially say such was the intention of William, the grand father, or any other than what was expressed."

In *Kidney* v. *Coussmaker*, 12 Vesey, Jr., Ch. R., 154, the Master of the Rolls (Sir William Grant) said: "Another objection made for the widow is, that the creditors take a benefit under the will of the testator by the devise for the payment of the debts, generally; and therefore they shall not be permitted to disappoint that part of the will, by which a provision is made for the widow; that is that the doctrine of election is to be applied to creditors. It is utterly inapplicable. It never has been so applied, and half the decrees upon marshalling assets are wrong, if there is any ground for that claim. It is true, creditors by simple contract cannot have any right, except by marshaling, against the real estate, unless the testator thinks fit to devise it for satisfaction of the debts, generally; yet they have never been held to stand in the same light as legatees. When the testator lets in such creditors by a charge, it is now settled, whatever doubt may formerly have been entertained upon it, that creditors, under a charge of debts and legacies, are to be paid in preference to legatees," etc.

Mr. Bispham says: "It was said by Sir William Grant, in *Kidney* v. *Coussmaker*, 12 Vesey, 156, that the doctrine of election did not apply in the case of a creditor. This *dictum* is true enough if confined only to those cases in which property is charged by will with debts; for, in such a case, the creditor may claim the benefit of the charge, and still seek satisfaction of his debt out of other assets. But the rule is, nevertheless, not of universal application; for it has been decided that when a creditor decisively acquiesces in a certain disposition of the debtor's property, he will not be allowed to enforce the collection of his debt by proceedings by which that disposition may be violated. Thus if a creditor accepts a dividend under an assignment for the benefit of creditors, he will not afterwards be allowed to avoid that assignment in order to render assets covered thereby liable to execution for his debt." (Citing *Adlum* v. *Yard*, 1 Rawle, 163; Perry on Trusts, sec. 596;) Bispham's Prin. Eq., sec. 306.

Mr. Perry says: "By accepting the trust (under an assignment for the benefit of creditors) a creditor made trustee waives all claims and liens upon the property inconsistent with the deed. (Citing *Harrison* v. *Mock*, 10 Ala. R., 185.) So creditors who accept the benefit conferred under such deed, and receive dividends or other advantages thereby, cannot set up rights inconsistent with the deed; nor can they, after receiving such advantages, impeach it, and procure it to be set aside, but they must comply with its provisions." (Citing *Adlum* v. *Yard*, 1 Rawle, 163; *Gutzwiller* v. *Lackham*, 23 Mo., 168; *Pratt* v. *Adams*, 7 Paige, 615; *Burrows* v. *Alter*, 7 Miss., 424; *Jewett* v. *Woodward*, 1 Edw. Ch., 195; *Lanahan* v. *Latrobe*, 7 Md., 268;) 2 Perry on Trusts, sec. 597.

In *Harrison* v. *Mock*, 10 Ala., 185, a debtor made an assignment of his property to one of his creditors as trustee, for the benefit of all of his creditors, who were to be paid ratably if the

property were not sufficient to pay all of them in full. The trustee had a judgment and execution against the maker of the deed when it was executed; he accepted the trust, took possession of the property, and afterwards caused part of it to be levied on and sold to ‘pay his debt. *Held*, on a bill filed against him by other creditors, that having accepted the trust, he was bound to take ratably with the other creditors, under the provisions of the deed, and had no right to cause part of the trust property to be sold on execution to pay his own debt—that by accepting the trust he waived his special lien on the property.

In *Gutzwiller* v. *Lackham*, 23 Mo., 173–4, the court says : " We are not prepared to depart from the rule laid down in *Adlum* v. *Yard*, 1 Rawle, 163, that though an assignment be in its nature calculated to delay creditors, and therefore voidable, yet, if a creditor take a dividend under it, he cannot afterwards question its validity."

In *Lemay* v. *Bibeau*, 2 Minn., 293, the court said: " There can be no doubt but that a conveyance of real estate, in due form, even if made with intent to defraud creditors, is good as between the parties and privies, and can only be avoided by a creditor of the fraudulent grantor. And the creditor may have his election, either to confirm the conveyance or attempt to avoid it, but he cannot do both. He cannot receive a benefit under the conveyance, and then turn around and claim that the conveyance is fraudulent and void. And it is held that by receiving a benefit under the conveyance claimed to be fraudulent, he thereby affirms it, so as to be estopped from setting up fraud or other facts in avoidance of it. He cannot hold on to such part of the contract as may be desirable on his part, and avoid the residue, but must rescind *in toto* if at all," etc.

In *Scott* v. *Edes*, 3 Minn., 387, the court said : " That the acceptance of dividends under the assignment, is an assent to,

.and confirmation of such assignment, by the creditor, has been uniformly held."

In *Merrill* v. *Englesby*, 28 Vermont, 150, held that an assignment which is void or inoperative will, if assented to by the creditors, become operative and binding upon them.

In *Geisse et al.* v. *Beall et al.*, 3 Wisconsin, 391, the court said: "The creditor must either treat the assignment as altogether valid or altogether void. He cannot hold it void in part and good in part. He cannot recognize and act upon it as valid, and afterwards repudiate it and treat it as void."

A judgment lien creditor, who accepts a dividend with other creditors under an assignment, thereby affirms the deed, and can not afterwards enforce his judgment against property embraced in the deed of assignment. *Moule et al.* v. *Buchanan et al.*, 11 Gill. & John., 314; *Lanahan* v. *Latrobe*, 7 Md., 268.

In *Swanson & Gray* v. *Tarkington et al.*, 7 Heiskell, 612, creditors who claimed the benefit of a deed of assignment, filed the bill against the trustee and others to enjoin the sale of the trust property for the payment of certain preferred debts, alleging that they were Confederate money debts, illegal and void: Held, that a party accepting the provision of a deed of trust for his benefit thereby affirms the instrument *in toto*, and is estopped from impeaching any of its provisions for the benefit of other parties.

In *Irwin* v. *Tabb*, 17 Serg. & Raw., 442, the same rule was applied as between creditors claiming under a mortgage made by a debtor in failing circumstances. Gibson, Ch. J., said: "The books are full of cases which show that a party shall not contest the validity of an instrument from which he draws a benefit, or affirm it in part and disaffirm it in part." The plaintiff might have repudiated the mortgage as fraudulent, but, electing to claim under it, he could not contest, as invalid, a provision made for the benefit of another.

This case was followed by the same learned judge in *Adlum* v. *Yard*, 1 Rawle, 168, who said: "But it is supposed that the doctrine of election is inapplicable to creditors. There is no adjudication in support of this, but *Kidney* v. *Coussmaker*, 12 Ves., 154, * * * and from which, in the broad terms in which the principle is predicated I entirely dissent." After explaining the character of that case, and conceding that the doctrine of election did not apply in the case there made, he adds: "But the unqualified assertion of the Master of the Rolls, that the doctrine of election is utterly inapplicable to creditors, seems to be received with many grains of allowance, even in England. (1 Herndon's Notes to Vesey, 172.) In *Irwin* v. *Tabb* we applied it to creditors claiming different debts under the same mortgage."

The same doctrine has been recognized in the New York cases. *Greene* v. *Morse*, 4 Barb., 335 ; *Pratt* v. *Adams*, 7 Paige, 615 ; *Maynard* v. *Maynard*, 4 Edw., ch. 711.

"In the case of a voluntary assignment, where the assignee creates his own trusts, a creditor who comes in to claim a share of the fund under it, must be content to take such share of it as the assignor intended to give him, and cannot claim that which was intended to be given to the assignee in trust for others. A creditor of the assignor, whether provided for by the assignment or not, who wishes to repudiate the trusts of the assignment on the ground that they are illegal and a fraud upon the honest creditors of the assignor, must apply to set aside the assignment as fraudulent and void against him, as a creditor, instead of coming in under the assignment itself as a preferred creditor or otherwise." Burrill on Assignments, p. 527, note 1.

It seems that Thomas G. Martin, after he made the trust deed, contracted other debts, and finally went into bankruptcy. The appellants had the right to file a bill, had they thought proper, to set aside the trust deed on the ground of the alleged fraudulent provision in favor of Martin & Branch. This they did not

choose to do, perhaps for the reason that, had they done so, the trust property might have gone into the hands of the assignee in bankruptcy of Martin, to be administered for the benefit of all of his creditors. They elected to claim under the provisions of the trust deed, and cannot be heard, as correctly ruled by the court below, on demurrer to their cross bill, to repudiate and defeat the provisions of the deed in favor of Martin & Branch.

*Second*—The appellants state in their answer that after the execution of the trust deed, and in October, 1869, the lands embraced in the deed were sold for taxes and purchased by persons named, who obtained certificates of purchase and assigned them to appellants for value, whereby they obtained the legal title to the lands, and they submitted that this gave them a superior right to have the entire debts represented by them, and secured by the deed of trust, paid in preference to other debts, as well as the amount advanced by them to purchase in the tax certificates, etc., out of the proceeds of the sale of the trust lands, etc.

The court decreed to them out of the trust fund the amount advanced by them for taxes, etc., and a *pro rata* upon the debts represented by them out of the remainder of the fund, which was a fair disposition of this feature of the case.

If the maker of the trust deed, and the trustee, neglected to pay the taxes on the lands, any beneficiary in the deed could advance the taxes and ask contribution from the other beneficiaries, or claim re-imbursement out of the trust fund, but he could not permit the lands to be sold for taxes and acquire a valid legal title by purchasing in the certificates of sale. *Pettus & Glenn* v. *Wallace et al.*, 29 Ark., 476.

*Third*—There is a controversy in the pleadings as to whether the appellee, Mary P. Branch, as executrix of Joseph Branch, surviving partner of the firm composed of George W. Martin and Joseph Branch, under the firm name of Martin & Branch,

was the legal owner and proper representative of the notes described in the deed of trust as due to Martin & Branch, or whether the legal title to the notes was not in Narcissa Martin, as executrix of George W. Martin.

The notes seem to have been in the custody of appellee, who made them exhibits to her bill.

Narcissa Martin, who was made a defendant to the cross bill of appellants, in her answer, in effect, disclaims title to the notes as executrix of George W. Martin, and concedes the right of appellee to collect and distribute any amount that might be paid upon them from the trust fund, and this ought to be satisfactory to the appellants, who have no interest in so much of the trust fund as was decreed to be paid on these notes.

Decree affirmed.